(76 South. 187)

No. 21030.

FRANEK v. BREWSTER. JACOBS v. SLADOVICH. · INTERSTATE TRUST & BANKING CO. v. SUCCESSION OF FRANEK.

(Feb. 23, 1915. On the Merits, June 5, 1916. On Rehearing, June 30, 1917.)

*(Syllabus by Editorial Staff.)*

1. APPEAL AND ERROR ☞640—RECORD—DISMISSAL.

A motion to dismiss an appeal because clerk of civil district court, instead of copying documentary evidence into three copies of transcript, sent up the original documents, will be denied, where omission was not imputable to appellants or their counsel, and they promptly took proper steps to correct the error, and certiorari issued to compel clerk to properly transfer documentary evidence.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2788, 2829.]

On the Merits.

*(Syllabus by the Court.)*

2. APPEAL AND ERROR ☞4—INJUNCTION ☞27 — ARREST OF PROCEEDINGS — EXECUTORY PROCESS.

The only remedy afforded for arresting executory proceedings on grounds not disclosed by the record is by injunction. The process afforded the defendant for making the complaint that there' was not sufficient authentic evidence to warrant the issuance of executory proceedings is an appeal from the order of seizure and sale.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 8–21; Injunction, Cent. Dig. §§ 50, 51, 53.]

3. MORTGAGES ☞417—COLLECTION—EXECUTORY PROCEEDINGS.

When a promissory note is made payable to the order of the maker and indorsed by him, and that fact is recited in the authentic act of mortgage securing the payment of the note, possession of the note is authority for instituting executory proceedings to collect it.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 1227–1236.]

4. COURTS ☞39—PLEA TO JURISDICTION.

No judgment can be rendered against a defendant whose plea to the jurisdiction of the court ratione personæ has been maintained, unless an appeal is taken from the judgment maintaining the plea and dismissing the suit against such defendant.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 152–156.]

5. MORTGAGES ☞122—EXECUTORY PROCEEDINGS—INTEREST.

When it is recited in a promissory note and in an authentic act of mortgage securing its payment that the note bears interest, although the rate of interest and date from which it runs be not stipulated, the court is authorized to include in the order of seizure and sale in executory proceedings the collection of interest at 5 per cent. per annum from the date of the note.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 225–227.]

6. EXECUTORS AND ADMINISTRATORS ☞184—SUCCESSION—RIGHT OF SURVIVING WIFE—REMARRIAGE.

After a widow has married again, she is not entitled to demand and receive in her own right from the succession of her deceased husband the $1,000, of which, as a widow in necessitous circumstances, she was entitled to the usufruct during her widowhood.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 694, 702, 704.]

On Rehearing.

(Additional Syllabus by Editorial Staff.)

7. EXECUTORS AND ADMINISTRATORS ⬥≈261—
SUCCESSION—CLAIM OF MINOR CHILD—PREF-
ERENCE.

A widow, as the administratrix of her hus-
band's succession, represents all the creditors,
including the homestead claim of his minor
child, which is to be paid to the minor in pref-
erence over all other claims against proceeds of
sale of property in executory proceedings.

[Ed. Note.—For other cases, see Executors
and Administrators, Cent. Dig. §§ 944–974.]

O'Niell, J., dissenting.

Appeal from Civil District Court, Parish
of Orleans; Fred D. King, Judge.

Suit by Joseph Franek against Harry C.
Brewster and his attorneys, Merrick, Lewis
& Schwarz, for the cancellation of a note and
for the allowance of a credit, consolidated
with executory proceedings by Thomas N.
Jacobs against Mrs. George Sladovich, and
with petition by Franek making Jacobs a par-
ty defendant in the original suit, and exec-
utory proceedings by the Interstate Trust &
Banking Company against the succession of
Joseph Franek, consolidated with the former
suit, wherein the administratrix filed a pe-
tition in the original suit asking that the In-
terstate Trust & Banking Company appear
and answer original and supplemental peti-
tions, which petition was adopted by An-
tonio Greco, purchaser at the sheriff's sale.
Suit of Joseph Franek dismissed as to defend-
ant Brewster, and judgment for succession
of Joseph F. Franek, and the Interstate Trust
& Banking Company and Jacobs appeal.
Judgment annulled, and the demands of the
administratrix rejected in part, and adjudica-
tion as to the purchaser Greco confirmed.

See, also, 71 South. 213, 139 La. 46.

Walter S. Lewis, of New Orleans, for ap-
pellants. H. C. Cage and Theo. Cotonio, both
of New Orleans, for appellee succession of
Franek.

O'NIELL, J. [1] The appellee has moved
to dismiss the appeal because the clerk of the
civil district court, instead of copying certain
documentary evidence into the three copies
of the transcript, has sent up the original doc-
uments.

On the petition of the appellants, we have
issued writs of certiorari, directing the clerk
of the civil district court to complete the
transcript of appeal in triplicate, by tran-
scribing the original documents into each
copy of the record.

It does not appear that the clerk's error
of sending up the original documents and
omitting to transcribe them into the triplicate
transcripts of appeal is imputable to the ap-
pellants or their counsel; and as they have
promptly taken the proper steps to correct the
error, there is no good cause for dismissing
their appeal.

The motion to dismiss the appeal is over-
ruled.

On the Merits—Statement of the Case.

In April, 1910, Harry C. Brewster, the New
Orleans agent of the F. W. Cook Brewing
Company, agreed to advance Joseph Franek
the money needed for the purchase of cer-
tain property of Franek's sister, Mrs. Mary
Franek Sladovich, occupied as a grocery
store and barroom, at the corner of Bourbon
and St. Ann streets, in New Orleans. A Mr.
Karst, representing the Columbia Brewing
Company, held a mortgage on the property,
securing the payment of a note of Mrs. Slad-
ovich for $3,513, dated December 16, 1909,
payable one year after its date and bearing
interest at 6 per cent. per annum. Mrs. Slad-
ovich agreed to sell the property to her
brother for $6,513, the purchaser to pay $3,000
in cash at the time of the sale and assume the
payment of the note of $3,513 held by Karst.
The agreement made verbally by Harry C.
Brewster and Joseph Franek was that the
former would loan the latter $3,000 for the
cash payment and take up the Sladovich note
of $3,513 held by Karst, at its maturity, and

carry it for five years, provided Franek would purchase from the Cook Brewing Company all the beer sold in his barroom, and allow the rebates on the sales, together with $40 a month rent, to be credited on the loan of $3,000. Franek's father-in-law, Gerlando Alfano, agreed to give a mortgage on his property to secure the payment of the $3,000 to Brewster.

The sale was made by Mrs. Sladovich to Franek on the 9th of April, 1910, for $6,513, of which Franek paid in cash the $3,000 loaned to him by Brewster; and, as representing the balance of the purchase price, Franek assumed the payment of the mortgage note of $3,513 held by Karst. On the same day Gerlando Alfano signed and delivered to Franek a promissory note for $3,000, payable five years after its date, and secured by mortgage on the property of Alfano, which note was delivered by Franek to Brewster to secure the payment of the loan of $3,000. At the same time, that is, on the 9th of April, 1910, Franek signed and delivered to Brewster a note for $3,513, payable on demand, secured by mortgage on the property bought by Franek from Mrs. Sladovich, to represent and secure the payment of the $3,513 to be paid by Brewster to Karst for the Sladovich note at its maturity. To warrant the payment of $40 a month as rent, Franek then signed a lease of the barroom and grocery store premises for five years to one M. E. Turner (who was interposed to represent Brewster) at $40 a month, payable monthly.

In October, 1910, Franek's health having failed, he sold out his grocery and barroom business to a Mrs. Victor, with the consent and approval of Brewster, and with the understanding that she would continue to pay $40 a month rent to Brewster to be applied to the payment of the Alfano note of $3,000.

On the 28th of December, 1910, that is, twelve days after the maturity of the Sladovich note, Brewster formally tendered and offered to return to Franek his mortgage note of $3,513, which had been given in lieu of the Sladovich note, but Franek refused to take it back. On the 30th of December, 1910, Brewster borrowed $3,500 from the People's Bank & Trust Company, with which he paid Karst the amount due on the Sladovich note; and, to secure the payment of the loan, Brewster gave the People's Bank & Trust Company his personal note for $3,500, with the Sladovich note and the Franek note of $3,513 as collateral security.

Thereafter Brewster, whose domicile was in Shreveport, La., quit representing the Cook Brewing Company in New Orleans, and returned to Shreveport, where he was engaged in other business.

In April, 1911, at the request of Brewster, the People's Bank & Trust Company delivered the two mortgage notes of $3,513 (the one signed by Mrs. Sladovich and the other by Joseph Franek) to Brewster's attorneys for collection. They made demand on Franek for the payment of the Sladovich note. And a few days later, that is, on the 25th of April, 1911, Franek filed suit against Brewster to recover the Sladovich note, and to have the mortgage securing it canceled. He alleged that his demand note of $3,513, dated the 9th of April, 1910, was given to Brewster in lieu of the Sladovich note, with the understanding and agreement that he (Franek) should have credit on the demand note for the rebates on the sales of beer and for the monthly payments of $40 as rent. Alleging that he did not know where Brewster was, and that both of the mortgage notes of $3,513 were then in the hands of Brewster's attorneys in New Orleans, Franek prayed that they be cited as parties defendant; that they and Brewster be ordered to surrender the Sladovich note for cancellation; that the demand note of $3,513 be reduced in amount to $2,615.40 by giving credit for $417.60 rebates on sales of beer and $480 rent; that the rent

of the property, as collected, at the rate of $40 a month from the 9th of April, 1911, be also credited on the demand note; and that the balance of the debt, if there should be any, be held not due or collectible until the 9th of April, 1915. Franek did not pray for a writ of injunction to prevent proceedings for the collection of either of the mortgage notes of $3,513.

On the 27th of April, 1911, the attorneys who were made defendants in Franek's suit filed executory proceedings against Mrs. Sladovich on the mortgage note signed by her, dated the 16th of December, 1909. The executory proceedings were instituted in the name of Thomas N. Jacobs, with the consent of the People's Bank & Trust Company and merely to avoid its appearance as plaintiff in a lawsuit. Jacobs had no interest whatever in the note or in the controversy.

The suit of Thomas N. Jacobs v. Mrs. George Sladovich was ordered consolidated with the original suit of Franek v. Brewster; and Franek filed a supplemental petition, making Jacobs a party defendant in the original suit, praying that he be cited and served with a copy of the original petition, and that the judgment demanded against Brewster be also rendered against Jacobs. In his answer to the suit, Jacobs admitted that Franek was entitled to have credit for the $897.60 claimed for rebates on sales of beer and rent at $40 a month, but alleged that the agreement between Franek and Brewster was that the credits should be applied to the payment of the Alfano note of $3,000, and not the demand note of $3,513. Jacobs admitted that only one of the mortgage notes of $3,513 held by him was to be paid, but contended that he had the right to hold both until the court should decide which note should be paid. He alleged that Franek had warranted that the payments on the Alfano note would amount to $125 a month, and that he would continue to purchase from

the Cook Brewing Company the beer sold in the barroom, and he alleged that Franek had violated the agreement.

Brewster filed an exception or plea to the jurisdiction of the court, alleging that he had never had a domicile in New Orleans. After hearing testimony on the plea, it was maintained by the court, and the suit of Franek was dismissed as to Brewster. After some testimony had been taken on the issues made up between Franek and Jacobs, the latter surrendered the Sladovich note and had the mortgage canceled, and his executory proceedings against Mrs. Sladovich were discontinued.

The assets and business of the People's Bank & Trust company were taken over by the Interstate Trust & Banking Company, and the latter institution thus acquired the mortgage note signed by Franek, dated the 9th of April, 1910.

Joseph Franek died in August, 1913, and his widow, Mrs. Frances Alfano Franek, caused the succession to be opened in the district court of Jefferson parish, where she qualified as administratrix.

On the 18th of November, 1913, while the trial of the original suit entitled Franek v. Brewster was yet pending, the Interstate Trust & Banking Company filed executory proceedings against the Succession of Joseph Franek on the mortgage note of $3,513, signed by him, dated April 9, 1910. On the suggestion of counsel for the administratrix, the judge of the civil district court, to whom the case was allotted, transferred it to the division in which the original suit entitled Franek v. Brewster was pending, and the judge of that division ordered the two suits consolidated. He did not issue ex parte an order of seizure and sale in the executory proceedings, but, on the suggestion of counsel for the defendant administratrix, issued a rule upon the Interstate Trust & Banking Company to show cause why the writ of

seizure and sale should issue. The bank answered the rule, and, after trial, the order of seizure and sale issued on the 1st of December, 1913. The administratrix did not appeal from the order nor attempt to arrest the executory proceedings by injunction, but filed a petition in the original suit instituted by her husband, and prayed that the Interstate Trust & Banking Company be cited to appear and answer the original and supplemental petitions. She admitted that the property of the succession of her husband, at the corner of Bourbon and St. Ann streets, had been seized and advertised for sale in the executory proceedings of the Interstate Bank & Trust Company; but she alleged that the order of seizure and sale was illegal and should be annulled on the ground that the allegations of the petition did not warrant the issuance of executory proceedings, and on the further ground that there was no authentic evidence that the note had been pledged to the bank, nor that a demand for payment of the note had been made. She alleged that the Interstate Trust & Banking Company was not the owner nor pledgee of the note and had no interest in it whatever; that if the bank did acquire the note, it was with knowledge of the contentions made in the suit filed by Franek against Brewster; that the bank was aware, when it filed the executory proceedings, that the note was in contest, that Jacobs claimed it, and that Franek was claiming offsets against it; and that the bank had no right to proceed via executiva under such circumstances. The administratrix pleaded, as lis pendens, and as operating an estoppel, the pendency of the suit in which the succession of her husband was plaintiff and Jacobs was defendant. She alleged that the mortgage note on which the executory proceedings were based would not become due until the 9th of April, 1915, and that it was subject to the credits set forth in the suit of Franek v. Brewster. She alleged that the executory proceedings were instituted, not in good faith, but for the purpose of harassing her and coercing her into paying an unjust claim, and that she was entitled to $500 damages. She alleged that she was a widow in necessitous circumstances, and, as such, was entitled to receive $1,000 from the estate of her deceased husband, by preference over all other creditors; and that, if the Interstate Trust & Banking Company had any claim, it should be referred to the succession proceedings in the parish of Jefferson. She prayed that the Interstate Trust & Banking Company and Thomas N. Jacobs be cited to appear and answer her demand, and that judgment be rendered against them and in favor of the succession of her deceased husband, annulling and setting aside the order for executory proceedings; that the succession recover $500 damages for attorneys' fees incurred by the illegal issuance of the executory proceedings; that the bank and Jacobs be ordered to surrender to her the Sladovich note of $3,513, and that the mortgage given to secure its payment be canceled; that the Franek note of $3,513 be reduced by the credit of $417.60 rebates on sales of beer and $480 rents collected by Brewster to March 9, 1911; that all subsequent rents collected be credited on the note, and that the balance due, if any, be held not due or collectible until the 9th of April, 1915. She prayed that, if there was a balance due on the Franek note, the holder should be ordered to assert his claim in the succession proceedings of the late Joseph Franek, contradictorily with other creditors of the succession, and that the claim should be held subordinate to that of the widow in necessitous circumstances. In the alternative, she prayed that, if the court should order the property of the succession of Joseph Franek sold to pay debts, she should be paid $1,000 as his widow in neces-

sitous circumstances and by preference over all other creditors.

The Interstate Trust & Banking Company and Thomas N. Jacobs pleaded to the petition of the administratrix the exception of no cause of action, which was referred to the merits of the suit. The sheriff proceeded with the sale of the mortgaged property, situated at the corner of Bourbon and St. Ann streets, and it was adjudicated to one Antonia Greco for $4,525 on the 22d of January, 1914. He paid the sheriff 10 per cent. of the price, according to the terms of the advertisement; and on the 3d of March of that year Greco filed a petition, repeating substantially the allegations made by Mrs. Frances Alfano Franek, administratrix, and obtained a rule on the sheriff and on the Interstate Trust & Banking Company, ordering them to show cause why he should not be relieved of the obligation to take title to the property and pay for it, until the validity of the executory proceedings should be determined, or, in the alternative, why the adjudication of the property should not be annulled and his deposit returned to him. In answer to the rule, the sheriff admitted that he had adjudicated the property to Greco and denied all other allegations of the rule. The Interstate Trust & Banking Company filed an exception of no cause of action, and, in answer to the rule alleged that the order of seizure and sale had issued after a trial and decision of the rule obtained by the administratrix to show cause why it should issue, and that the adjudicatee therefore had no right to resist payment of the price of the adjudication. The defendants in rule prayed that the rule be dismissed; but the court ordered that the same be referred to and tried with the original suit of Franek v. Brewster.

On the 20th of April, 1914, Mrs. Frances Alfano Franek filed a motion, alleging that she had married Emile L. Junker, and praying that he be made a party to the proceedings to aid and authorize her. The motion, to which Emile L. Junker was a party, was granted by the court.

In answer to the petition of the administratrix of the succession of the deceased, Joseph Franek, the Interstate Trust & Banking Company denied that there was any illegality or irregularity in the executory proceedings by which the mortgaged property had been sold and adjudicated to Antonio Greco; denied that the mortgage note was subject to any credits or that payment had been extended; averred that the administratrix had not taken any steps to prevent the sale, and therefore should not be heard to contest its validity. The bank alleged that it had only heard of the contentions made by Franek after having acquired the mortgage note as collateral security for the payment of the note of H. C. Brewster; that the People's Bank & Trust Company had acquired the mortgage note from Brewster on the 30th of December, 1910, in good faith, for a valuable consideration, before any demand had been made for payment and without knowledge of any equities existing between Franek and Brewster. The Interstate Trust & Banking Company denied that Mrs. Frances Alfano Junker was in necessitous circumstances, and averred that she was being provided for by her second husband. And the bank prayed that the suit of the administratrix be dismissed.

The case was tried and submitted on the complicated pleadings and issues set forth above, and judgment was rendered in favor of the succession of Joseph Franek and against Thomas N. Jacobs and the Interstate Trust & Banking Company, as follows: The executory proceedings entitled Thomas N. Jacobs v. Mrs. George Sladovich, and the executory proceedings entitled Interstate Trust & Banking Co. v. Succession of Joseph Franek, were decreed null and void, as having

been issued illegally and improvidently. The defendants Thomas N. Jacobs and the Interstate Trust & Banking Company were ordered to surrender to the succession of Joseph Franek for cancellation the mortgage note for $3,513, signed by Mrs. Sladovich, dated the 16th of December, 1909. It was ordered, adjudged, and decreed that Harry C. Brewster be recognized as the holder and owner of the demand note of $3,513 signed by Joseph Franek, dated the 9th of April, 1910; that the amount be reduced by credits amounting to $1,648 as of date the 9th of November, 1912; that Harry C. Brewster be ordered to account for all subsequent rents of the property situated at the corner of Bourbon and St. Ann streets, at $40 a month from the 9th of November, 1912; that the balance due on the note, if there should be any, be not collectible until the 9th of April, 1915; that Harry C. Brewster, as owner of the Franek note, be referred to the proceedings in the succession of the deceased, Joseph Franek, in the district court of Jefferson parish, to assert whatever claim he might have to any balance due on the note. It was further ordered, adjudged, and decreed that the claim of the widow of the late Joseph Franek and the claim of their minor child, Nancy Franek, for $1,000 be recognized as superior in rank to the claim of Harry C. Brewster, as holder of the Franek note. Thomas N. Jacobs and the Interstate Trust & Banking Company were condemned to pay the costs of the litigation. They appealed from the judgment. The administratrix did not appeal from the judgment maintaining Brewster's plea to the jurisdiction of the district court, nor does she pray for an amendment of the judgment appealed from.

## Opinion.

There was no reason or basis whatever for the decree annulling the executory proceedings entitled Thomas N. Jacobs v. Mrs. George Sladovich, because it was shown on the trial of the suit of Franek v. Brewster that the executory proceedings complained of were discontinued at the plaintiff's cost, and that the mortgage note signed by Mrs. Sladovich was surrendered and the mortgage canceled.

[2] The record does not disclose the reasons assigned by the district judge for annulling the executory proceedings entitled Interstate Trust & Banking Co. v. Succession of Joseph Franek. Notwithstanding the bank was entitled to have the order of seizure and sale issued ex parte, the court gave the defendant administratrix a hearing on her rule ordering the bank to show cause why the executory proceedings should issue. She did not attempt to appeal from the order dismissing her rule and directing that the writ of seizure and sale issue; nor did she attempt to arrest the executory proceedings by injunction. The only process afforded a defendant for arresting executory proceedings, on the complaint that there was not sufficient authentic evidence before the judge to authorize the issuance of his fiat, is by an appeal from the order of seizure and sale. And the only remedy for arresting executory proceedings, on grounds not disclosed by the proceedings, is by injunction. C. P. arts. 738, 739, 298, and 303; Clement v. Oakey, 2 Rob. 90; Minot v. President, etc., 4 Rob. 490; Zuntz v. Cornen, 10 La. Ann. 433; Dupre, Adm'r, v. Anderson, 45 La. Ann. 1134, 13 South. 743; Josephson v. Powers et al., 121 La. 28, 46 South. 44.

Pretermitting the defense of the Interstate Trust & Banking Company, that the administratrix of the succession of Joseph Franek did not appeal from the order of seizure and sale nor arrest the executory proceedings by injunction, we have examined the evidence in the suit entitled Franek v. Brewster, and find no merit in the contention that the succession of Franek is entitled to credit on the note of $3,513 signed by him, for rebates on sales of beer and for rents at $40 a month.

Franek, as a witness in his own behalf, tes-. tified that his agreement with Brewster was that these credits should be applied to the payment of the $3,000 note signed by Gerlando Alfano.

[3] There would have been no merit in the contention of the administratrix of the succession of Joseph Franek that the executory proceedings should not have issued without authentic evidence of the pledge of the note to the Interstate Trust & Banking Company, and authentic evidence that a demand for payment had been made, even if that contention had been made on appeal from the order of seizure and sale. See Catalogne v. Alva, 13 La. Ann. 98; Roman v. Denney, 17 La. Ann. 126; Thiel v. Conrad, 21 La. Ann. 214; Renshaw v. Richards, 30 La. Ann. 398; Pargoud v. Richardson, 30 La. Ann. 1286; Fidelity & Deposit Co. v. Johnston, 117 La. 882, 42 South. 357. The fact that the note was made payable to the order of its maker and indorsed by him, and that the note was therefore negotiable by mere delivery, was declared in the authentic act of mortgage; hence possession of the note was authority to institute executory proceedings to collect it.

There is no merit in the contention that the Interstate Trust & Banking Company had no right to proceed via executiva on the Franek note while the suit of the succession of Brewster against Thomas N. Jacobs was pending.

[4] The judgment rendered against Harry C. Brewster, charging him with rents and rebates, ordering them credited on the Franek note of $3,513, and declaring the balance not due or collectible until the 9th of April, 1915, was entirely out of order, because the court had already maintained Brewster's plea to the jurisdiction, and had dismissed the suit as far as he was concerned.

[5] Our attention is called to the fact that the executory proceedings issued for the collection not only of the sum of $3,513, but also interest thereon at 5 per cent. per annum from the 9th of April, 1910, and 10 per cent. attorneys' fees on both the principal and interest. It is contended that the note and mortgage on which the executory proceedings issued did not call for the payment of interest. The note and the act of mortgage both recite that the note bears "interest at the rate of ——— per cent. from ——— until paid." The legal rate of interest is 5 per cent. where no rate is stipulated. R. C. C. art. 1938. And when the instrument provides for the payment of interest, but does not specify the date from which the interest runs, it runs from the date of the instrument. Act No. 64 of 1904, p. 151, § 17, No. 2. Under the law, therefore, the district judge was warranted in including in his order of seizure and sale the collection of interest at 5 per cent. per annum from the date of the note.

[6] The judgment declaring Mrs. Frances Junker to be a widow in necessitous circumstances, and ordering that she and her minor child, Nancy Franek, be paid $1,000 from the estate of her deceased husband, Joseph Franek, must also be reversed. Mrs. Frances Franek had married Emile L. Junker, and was therefore not a widow, when her demand for $1,000, as a widow in necessitous circumstances, was submitted to the court. In fact, as far as the evidence goes, she was not a widow when she asserted the claim for $1,000 as a widow in necessitous circumstances. The law allows the widow in necessitous circumstances to demand and receive from the succession of her husband $1,000, and to enjoy the usufruct thereof only during her widowhood; after which, the law declares, the amount shall belong to the children or other descendants of the deceased husband. R. C. C. art. 3252; R. S. §§ 2369, 2885, 3686; Act No. 255 of 1852, p. 171. After the widow of Joseph Franek married Emile L. Junker, she had no right to demand and receive $1,000 from the succession of

her deceased husband, except perhaps in the name and on behalf of his child. The decision in the Succession of White, 29 La. Ann. 702, holding that the financial condition of the widow at the time of her husband's death, and not her condition at the time she makes demand for the $1,000 as a widow in necessitous circumstances, determines her right to the $1,000 (overruling the decisions in McCoy v. McCoy, 26 La. Ann. 686, which had been cited with approval in Succession of Robertson, 28 La. Ann. 832), is not inconsistent with our holding, in accordance with the statute, that the widow has no right to demand and receive the $1,000 in her own name, after having married again. The presumption is that the necessities for Mrs. Junker's maintenance and support are being provided by her husband. In fact, the only evidence adduced on this subject is the testimony of Mrs. Junker that her first husband left no other property than the mortgaged property at the corner of Bourbon and St. Ann streets, and that she had no other property or means. She did not sue in the name or on behalf of her child, nor allege that her husband was survived by a child or other descendant. When she testified that there was a surviving child, issue of her marriage with the deceased, Joseph Franek, the attorney for the Interstate Trust & Banking Company promptly interposed the objection that she alone was claiming the $1,000 in her own right, and that she had not even alleged that her husband was survived by a child. The objection should have been sustained.

For the reasons assigned, the judgment appealed from is annulled; and it is now ordered, adjudged, and decreed that the demands of Mrs. Frances Alfano Junker, as the widow by first marriage of Joseph Franek and as administratrix of his succession, be and they are rejected; that the adjudication made to Antonio Greco of the property at the corner of Bourbon and St. Ann streets, in New Orleans, in the executory proceedings of the Interstate Trust & Banking Company against the succession of Joseph Franek, be confirmed; and that the sheriff proceed to collect the price of the adjudication and pay it to the Interstate Trust & Banking Company, to the extent of $3,513 and interest thereon at 5 per cent. per annum from the 9th of April, 1910, and 10 per cent. attorneys' fees on the principal and interest. Whatever claims the succession of Joseph Franek has against Harry C. Brewster are reserved. The costs incurred in the rule issued at the instance of Antonio Greco are to be paid by him. The costs incurred in the executory proceedings instituted by Thomas N. Jacobs, to and including the discontinuance of the suit and the cancellation of the mortgage, are to be paid by him. All other costs hereof are to be borne by the succession of Joseph Franek.

### On Rehearing.

PROVOSTY, J. [7] Mrs. Franek is before the court as administratrix of her husband's succession. As such she represents all the creditors of that succession, chief of all is her minor child. The $1,000 homestead is therefore being claimed for the minor child as well as for herself. Indeed, in a case where a widow had appeared only in her individual capacity, this court said:

"Whether or not the tutor of the minor has applied for the homestead is immaterial. The plaintiff, who has an interest, has made the application. She can recover, however, only what the law allows, which is, in this case, a usufruct during widowhood of $733.05; afterwards, under the express provision of section 1694 of the Revised Statutes, this money must pass to and vest in the minor heir of the deceased. The destination of the money, after the expiration of the usufruct, is fixed by law, regardless of the question whether the tutor of the minor has made a formal application for the homestead or not." Corner v. Bourg, 26 La. Ann. 616.

It is therefore ordered, adjudged, and decreed that the decree heretofore handed down herein be amended in so far as it rejected the claim of the minor Nancy Franek for the

$1,000 homestead, and it is now ordered, adjudged, and decreed that this $1,000 homestead be paid to the minor in preference over all other claims out of the proceeds of the sale of the property in question.

LECHE, J., takes no part.

O'NIELL, J., dissents from the ruling, on rehearing, ordering $1,000 paid to the minor child of the deceased, Joseph Franek, on the grounds: (1) That no demand has been made on behalf of the child; (2) that there was no allegation that there was a minor child; and (3) that evidence of the existence of the child was admitted over the objection of the attorney for the Interstate Bank & Trust Company, and on the further ground that the quotation from the decision in Corner v. Bourg, 26 La. Ann. 616, has no application whatever to the question at issue, but refers to a case where the widow, claiming the $1,000, was entitled to it, and it was properly held that the minor child was not a necessary party to the proceeding.