128 So.2d 669 (1961)
Mrs. Victoria Conan DOHERTY; Mrs. Imogene Huddleston, widow of Charles Blake; Mrs. Lois Huddleston, wife of Fred Nugent and Namon V. Huddleston,
v.
Sam RANDAZZO.
No. 70.
Court of Appeal of Louisiana, Fourth Circuit.
March 20, 1961.
Rehearing Denied April 24, 1961.
*670 Racivitch, Johnson & Wegmann, Fred P. Westenberger, New Orleans, for plaintiffs and appellants.
Tillery & McBride, Allen J. Tillery, Arabi, for defendant and appellee.
REGAN, Judge.
Plaintiffs, Victoria Conan Doherty, Imogene Huddleston Blake, Lois Huddleston Nugent and Namon W. Huddleston, the heirs of Ruth Huddleston Livaccari, instituted this suit against the defendant, Sam Randazzo, endeavoring to nullify a seizure and public sale of property by executory process. Defendant, the mortgagee, who petitioned for foreclosure to satisfy a past due indebtedness, purchased the property at public auction, which plaintiffs alleged is a nullity because the formalities prescribed by law in executory proceedings were not strictly complied with by the defendant.
Defendant filed exceptions of no right or cause of action, which were overruled, and then answered and asserted that the defects plaintiffs complain of are insufficient to warrant a setting aside of the sale. Alternatively, he pleaded that plaintiffs, who had sufficient notice before the property was sold, lost their right to attack its validity through laches.
From a judgment dismissing plaintiffs suit, they have prosecuted this appeal.
The facts, chronologically related, are these:
On September 1, 1951, Tony and Ruth Livaccari borrowed $7,000 from defendant and executed ten promissory notes of $700 each, secured by a mortgage on their home located in the Parish of St. Bernard. The parties to the mortgage agreed that the indebtedness should be retired within ten years, and accordingly, the notes were drawn so that one would mature on September 1st of each succeeding year and paraphed to identify them with the act of mortgage. There was also included in the mortgage the following provision:
"* * * it shall be lawful for, and the mortgagor herein does hereby authorize the mortgagee or any future holder of the mortgage note, or notes, to cause all and singular the property hereinabove described, to be seized and sold under executory process issued by any competent court, without appraisement, to the highest bidder for cash, the said mortgagor hereby confessing judgment in favor of said mortgagee, * * *"
On January 20, 1954, Tony Livaccari died, leaving no forced heirs, and his wife was entitled to his interest in the property as his heir, although a succession was never opened to place her in possession of this community asset.
On July 5, 1955, Ruth Livaccari died in the City of Shreveport, Louisiana, survived by her mother, a forced heir, and two sisters and one brother, legal heirs.
Since the time the money was loaned by defendant in 1951, the Livaccaris had paid approximately $700 on the loan, and while there is some dispute as to whether subsequent payments were made, the evidence adduced preponderates to the effect that the payments on the notes were greatly in arrears. In fact, the record reveals that unusual kindness and consideration were shown to the Livaccaris by Randazzo throughout their lifetime. The innuendo *671 of fraud is completely refuted both by the record and the characteristics of the case.
On July 6, 1955, one day after Mrs. Livaccari's death, defendant instituted proceedings via executiva, praying for an order of seizure and sale of the property to satisfy the unpaid balance of the loan, asserted to be $6,300 including interest. Defendant Randazzo, plaintiff in that proceeding, alleged that the successions of both Tony and Ruth Livaccari had never been opened, administered or accepted by the heirs, and accordingly prayed that an attorney be appointed by the court to represent these successions.
There was attached to Randazzo's petition a conformed copy of the authentic act of mortgage; however, an examination of that document reveals that it is not properly certified as a true copy. While it is rubberstamped as such and the mortgage book and folio number showing its recordation is inscribed thereon, it is not signed by any official on the line designated for a deputy clerk's signature.
On July 11, 1955, the judge to whom the petition of Randazzo was presented, signed an order appointing August A. Nobile, Jr., attorney to represent the successions of Tony and Ruth Livaccari in the foreclosure proceedings and authorizing the issuance of executory process. That same day Nobile was served with the three day demand for payment which the law requires be served on the proper representative of the mortgagor before the property may be seized by the sheriff.
However, there is nothing in the record which shows that the attorney received notice of his appointment by the court to represent the successions.
On July 20, 1955, Nobile, acting in his capacity as attorney for the successions, sent a letter to all the heirs who are plaintiffs herein, advising them that the property of Ruth Livaccari would be sold under a foreclosure proceeding. While one of the plaintiffs denied receiving the letter, we are convinced that she did in fact receive the letter because her husband, a resident of Shreveport, visited New Orleans to speak with Nobile and represented himself as the agent for the three heirs who then resided in Shreveport. One of the heirs is a resident of New Orleans.
Nobile explained that the letters were not mailed until July 20th because the names and addresses of the heirs were unknown to him and he only discovered the proper names and addresses after a member of Randazzo's family received a thank-you note for flowers they had sent to Ruth Livaccari's funeral. It is pertinent to observe at this point that the mortgagor and her heirs were collateral relatives of the mortgagee.
Plaintiffs attempted to adduce testimony to the effect that the heirs had insufficient notice of the sale and seizure, and that their attempts to forestall the sale were thwarted by Nobile's uncooperative attitude toward the heirs and his refusal to give them sufficient legal advice. Since the record completely fails to support this contention, we find it unnecessary to discuss the testimony adduced in connection therewith.
On September 7, 1955, the property was adjudicated to the defendant Randazzo at a public auction held on the steps of the St. Bernard Parish Courthouse. Within six weeks thereafter, or on October 17, 1955, plaintiffs instituted this suit to annul the sale.
Plaintiffs contend that the irregularities in the executory proceedings, namely the failure to produce authentic evidence of the act of mortgage upon which the order for executory process was based, the failure to include evidence in the record of the notice of appointment of an attorney to represent the successions and a defect in the advertising notifying the public of the impending sale, were sufficient grounds to annul the sale.
While defendant maintains that the foreclosure proceeding met all the requisites of executory process, the most persuasive contention *672 urged on his behalf was that of laches by virtue of plaintiffs' failure to act before the sale was made, despite the fact they had notice thereof.
Had the plaintiffs either appealed suspensively from the order for executory process or filed an injunction proceeding to arrest the foreclosure before the sale[1], the law is clear that the order would have been vacated predicated on the fact that it was issued without sufficient authentic evidence to support it. It is a well settled principle of our law that a mortgage creditor must comply exactly with all the prescribed formalities prerequisite to the issuance of an order for seizure and sale via executiva.[2] It appears too obvious to require citation in support thereof that authentic evidence of an act of mortgage is a certified copy of that document.[3]
However, as a general rule, a mortgagor is estopped from complaining that the order for executory process was signed without ample authentic evidence once the property is adjudicated.[4] An exception thereto was initially created in the case of Viley v. Wall[5] and the validity thereof was recognized in two subsequent cases.[6] In the Viley case, the court rationalized thusly:
"In support of the exception of no cause of action, defendants contend that, although the petition alleges that plaintiff did not learn of the proceedings for the foreclosure of the mortgage and sale of the property until a part of it had been sold, as to the portion covered by this suit it is alleged that plaintiff did know of said proceedings before the sale, and, having failed either to appeal from the order of seizure and sale or to enjoin the same, he is now barred from and the petition discloses no cause of action for annulling the mortgage and sale; in other words, that the sole remedy in such proceedings is to appeal or enjoin.
"We have carefully examined the jurisprudence and have been unable to find any decision sustaining this view; nor have defendants cited any case so holding where the property had not passed out of the hands of the purchaser at such sale, and who was charged with knowledge of and participation in the fraud and conspiracy, or other nullities or illegalities upon which the same was attacked. On the other hand, our reports are full of cases where such suits have been brought and decided, in which the proceedings and sales under executory process have been assailed after the sale, and the rights of the parties determined by the merits of each case." (Emphasis added)
Therefore, plaintiffs must bring their case within this exception in order to have a standing in court.
Defendant herein was both the mortgage creditor who initiated the executory proceedings and the adjudicatee at the *673 sale of the property. Not only is the purchaser charged with the knowledge of the nullity upon which the order was improvidently issued, but he was also responsible for the fatal defect i.e., failure to produce authentic evidence of the act of mortgage. Therefore we conclude that the record supports a finding that the plea of estoppel is without merit in the instant proceedings,[7] and further, that the order for executory process, improvidently issued without authentic evidence to support it should be properly nullified because plaintiff in that proceeding failed to meet the strict requisites that would entitle him to this harsh remedy.
For the reasons assigned, the judgment appealed from is reversed, and it is now ordered, adjudged and decreed that the sheriff's sale of September 7, 1955 be annulled and the order authorizing it vacated, and that the inscription, registered in the Conveyance Records of St. Bernard Parish in Book 60, Folio 183, be cancelled, which shows a transfer of the following described property:
A Certain Portion of Ground known as Plot "D" of the re-subdivision of Lots 24 and 25 of the Original Story Plantation Subdivision as shown on a plan of survey by Eustis & Bref, Surveyors, City of New Orleans, dated August 10, 1916, a copy of which is annexed to an Act passed October 13, 1916 before J. Kenton Bailey, Notary Public, City of New Orleans; said Lots 24 and 25 now re-subdivided into Plots "A", "B", "C", "D", "E", "F", and "G" as per plan of survey by R. P. Rordam, C.E., dated September 1, 1948, blue print of which is annexed to an Act of Sale by Antonio Livaccari, et al. to Episanio Livaccari, Act before Anthony B. Nunez, Notary Public, dated July 28, 1949; said Plot "D" extends in depth from the Mississippi River water line to the 40 arpent line in the rear, is bounded on the lower or southeast side by the dividing line between Plots "C" and "D" of the re-subdivision of Lots 24 and 25 of the Original Story Plantation Subdivision hereinabove referred to; and on the upper or northwest side by the dividing line between Plot "D" and Plot "E" of the re-subdivision of Lots 25 and 24 of the said Original Story Plantation Subdivision; *674 measures in width along line adjoining and parallel to the Louisiana paved Highway No. 1 in St. Bernard Parish a width of 54 feet, 9 inches, 6 lines, and has the same width on a line located 705 feet in the rear and parallel to the line on the north side of said public highway.
Defendant is to pay all costs of these proceedings.
Reversed and rendered.
NOTES
[1] The alternative remedies of suspensive appeal or injunction to stay an order of sale under executory process was first sanctioned in General Motors Acceptance Corp. v. Anzelmo, 222 La. 1019, 64 So.2d 417 and reaffirmed in Myrtle Grove Packing Company v. Mones, 226 La. 287, 76 So.2d 305. Prior to the Anzelmo case, a mortgagee aggrieved by an order of seizure and sale by executory process had one recourse, and that was to file a suspensive appeal from the order. The leading authority therefor is Coreil v. Vidrine, 188 La. 343, 177 So. 233, and this case was specifically overruled by the Anzelmo decision.
[2] General Contract Purchase Corp. v. Doyle, La.App., 56 So.2d 432, and cases cited therein.
[3] City of New Orleans v. Pigniolo, 1877, 29 La.Ann. 835.
[4] Miller v. People's Homestead & Savings Association, La.App., 161 So. 656; Franek v. Brewster, 141 La. 1031, 76 So. 187.
[5] 1923, 154 La. 221, 97 So. 409, 411.
[6] Burden v. People's Homestead & Savings Association, La.App., 167 So. 487; Continental Securities Corp. v. Wetherbee, 1937, 187 La. 773, 175 So. 571.
[7] Defendant, proceeding under the authority of Code of Practice, Article 737, requested the court to appoint an attorney to represent the successions. The article reads:

"If the debtor who has granted the privilege or mortgage is absent, and not represented in the State, or if he can not be found and served after diligent effort, though he may still reside within the State, the judge, at the request of the plaintiff, shall appoint an attorney, to represent debtor to whom notice of the demand shall be given in the manner above directed, and contradictorily with whom the seizure and sale shall be prosecuted."
Plaintiff herein did not attack the validity of Randazzo's appointment of an attorney to represent the successions, by asserting that the record conclusively shows that no diligent effort was exerted by defendant to ascertain the names and addresses of the heirs. It will be recalled that Randazzo's family was notified of Ruth Livaccari's death by one of her heirs and that the defendant sent flowers to the funeral. It is apparent that had Randazzo exerted a reasonable effort he could have learned the whereabouts of the heirs.
However, if we assume there is no invalidity attached to the appointment of the attorney Nobile, we would be compelled to conclude that the plea of laches is inappropriate here because a curator is not authorized to waive any legal defenses the absentee might have. Code of Practice, Article 116 provides:
"If the minor against whom one intends to institute a suit has no tutor, the plaintiff must demand that an attorney at law be appointed to defend the suit. The same course shall be pursued if the person intended to be sued be absent and not represented in the State, or, in partition or expropriation suits or any other suits in which an absentee may be represented by an attorney at law * * *, the attorney at law so appointed may waive service and citation of the petition, but shall not waive time or any legal defense."