15    97
48    62

BERNARD GRAHAM *v.* ELIZA J. EAGAN.

Where the plaintiff in execution is the purchaser of property sold under execution of a judgment sub-
sequently reversed on a devolutive appeal, he is obliged to restore the property itself, and place the
defendant in the same condition he would have occupied if no such judgment had been obtained
against him.   It is a proper case for the *restitutio in integrum.*

APPEAL from the Fourth District Court of New Orleans, *Price,* J.
    *Durant & Hornor,* for plaintiff and appellant.   *C. Roselius* and *F. Dugué,*
for defendant.

MERRICK, C. J.  This case presents a question of law.  The case may be
briefly stated as follows :

The plaintiff having obtained judgment against the defendant, she prosecuted
a devolutive appeal to this court, her suspensive appeal having failed for want of
sufficient security.

During the pendency of the appeal, the plaintiff issued his execution, and
bought certain property as the property of defendant under the same, for the sum
of $4000.   He deducted the amount of his judgment, $2,093 63, and deposited
the remainder with the Sheriff, where it still remains.

On the appeal, the judgment of the lower court was reversed, and one rendered
in favor of the defendant as of nonsuit.  The present proceeding is a rule upon
the plaintiff to show cause why he should not restore to the defendant the pro-
perty which he had bought under the execution issued upon his judgment, which
had been annulled by the decree of this court.

The rule having been made absolute, plaintiff appeals.

The plaintiff relies mainly upon the case of *Baillo* v. *Wilson,* 5 N. S. 214, as
enunciating the principles of law which ought to govern this case.  We will con-
sider that case hereafter.

It is evident, that sales made pending a devolutive appeal may present two
aspects :

1st. Where a third person buys under the execution, and,

2dly. Where the judgment creditor and appellee buys the property.

In the first case, it is reasonable that the innocent purchaser who has parted
with his money upon proceedings apparently valid at the time, should not be
prejudiced by the subsequent change of affairs by the reversal of the judgment.

But the case is not the same where a creditor, whose demand has been declared
by a tribunal in the last resort, to be unfounded.  He has not parted with his
money, and at the termination of his unjust suit, he ought not to be placed in a
better condition than he would have been, if he had not attempted to obtain
what did not belong to him.

It cannot be disputed that, whether the supposed judgment creditor is in re-
ceipt of the money by the sale of the property of the defendant to a third person,
or he has obtained, by his own bid, the property itself, pending the devolutive
appeal, he owes restitution to the party who has succeeded in reversing his judg-
ment.  The only question which can be raised is as to the mode in which restitu-
tion shall be made.

In the first case, the only restitution he can make, is to return to the appellant
    13

the price which he has unjustly obtained by the sale of his supposed debtor's property. In the second case, he can do more : he can restore the *property* itself, and place the appellant in the same condition he would have occupied if he had not been harassed with an unfounded demand.

This is precisely what is meant by the *restitutio in integrum.* If there be ground for restitution at all, there is the same ground for a complete restitution, a restitution *in integrum.*

Mackeldey, speaking of the restitution of the Roman law, says : " Lorsque la restitution était accordée au demandeur, il rentrait également dans ses droits et actions primitifs, comme s'il ne les avait jamais perdus." Partie Générale, sec. 228, III, ed. 1846.

We are not aware of any provision of positive law which gives the party who has obtained the reversal of the judgment against him a right to restitution against the acts of his adversary under an execution ; yet our courts have not hesitated to apply equitable principles, which the Code supposes to exist, so far as to compel the appellee to restore whatever *money* he has made upon his execution. The principles which admit the action at all require a perfect restitution.

Thus Ulpian says : " De in integrum restitutionibus, utilitas hujus tituli non eget commendatione ; ipse enim se ostendit. Nam sub hoc titulo plurifariam praetor hominibus vel *lapsio,* vel circumscriptis subvenit ; sive metu, sive calleditate, sive aetate sive absentiae inciderunt in captionem."

Paul adds : " Sive per status mutationem aut justum errorem."

So Modestinus : " Omnes in integrum restitutiones, causa cognita a praetore permittuntur : scilicet, aut justitiam earum causarum examinet, an verae sint, quarum nomine singulis subvenit." Dig. IV, T. 1, L. 1, 2, 3.

Assuming, therefore, that equity requires, that after an erroneous judgment has been annulled, the parties should be placed as nearly as possible in the same condition they occupied before the erroneous decree, we will examine the grounds upon which the argument is based which compels a restitution of the price of the thing sold, and not the thing itself, where the appellee has been the purchaser.

The argument of the case of *Baillo* v. *Wilson,* already referred to, rests upon this : the Code of Practice says, as did the Act of 1803, " The adjudication thus made has of itself alone the effect of transferring to the purchaser all the rights and claims which the party in whose hands it was seized might have had to the thing adjudged." C. P. 690. If so, it is urged, the title thus transferred is absolute, and the courts have no authority to say on any subsequent event the title shall be divested. 5 N. S. 220. This argument proves too much, and is liable to be retorted. The same Code of Practice says, Art. 704, " Where the Sheriff has sold for ready money, he shall, on simple demand, pay to the judgment creditor or his attorney the sum coming to him from the price of adjudication, unless the court enjoins him not to make payment ; and if there remain a surplus after the suing creditor is paid, as well as the costs, the Sheriff shall deliver such surplus to the debtor."

Now, (according to the argument,) the Code has expressly ordered the price to be paid to the creditor in execution, and the courts have no authority to say on any subsequent event, that he shall repay that which the law has given him in absolute terms ; which is absurd.

Again, a case may be presented where the judgment of the lower court has been only partially reversed, and the appellee's demand is sustained in part. The

question is now asked, what disposition would be made of a sale pending an appeal in such a case, where the appellee became the purchaser?

The answer is plain : the *restitutio in integrum* is an equitable action, in which the court renders judgment according to the facts. If the property were sold to a stranger, and the appellee has received more than the judgment in the last resort awards him, he must restore the excess. So if there were a just ground for the sale, and he became the purchaser, it would seem he must restore the excess of the price.

It is further urged, that if the appellee could not obtain an absolute title, he would be precluded from bidding at the sale. It may be answered, he would be much more willing to bid, if he knew that he might relieve himself on the reversal of the judgment by the restoration of the property, and that he should not be compelled to raise money to pay the price.

It is said that a revocation of a power of attorney does not revoke a previous sale under it. If we assume a case where the party making the power were not *sui juris*, it would have more analogy, and in such a case the sale might be rescinded.

Again, Art. 988 of the Code of Practice is quoted to show that the judgment creditor may purchase at a Sheriff's sale. The same Art. gives the judgment *debtor* the right to purchase also. But no one supposes that he is invested with a new title notwithstanding the positive provisions of Art. 690 relied on. Art. 690, then, is subject to exceptions, as previously shown.

We will now examine the common law cited in support of the decision in the case of *Baillo* v. *Wilson*.

At common law, the lands of the judgment debtor depending upon a feudal tenure, were not subject to execution. The goods and chattels (which included leases) were. Subsequently, *the possession* of lands was permitted to be seized under the writs of elegit and extent. Now, a quotation of the passages cited in the opinion in *Baillo* v. *Wilson*, will show that the doctrine at common law was not carried to the length supposed.

The case cited from Croke James was that of *Goodyere* v. *Ince*, where a lease was delivered the plaintiff under an elegit. On a reversal, the question was, whether the plaintiff in error should be restored to his lease, or the price for which it was delivered. " All the court held that this sale should not bind him ; for there is a difference between this sale and a delivery upon an *elegit* to the party himself, and a sale to a STRANGER upon a *fieri facias ;* for the *fieri facias* gives authority to the Sheriff to sell and to bring the money into court ; wherefore, when he sells a term to a STRANGER, although the execution be reversed, yet he shall not by virtue thereof be restored to the term, but to the moneys, because he comes thereto by act in law. But the sale and delivery of the lease to the party himself upon an *elegit* is no sale by force of the writ delivered in extent, which being reversed, the party shall be restored to the term itself." Cro. James, 246. This case is cited in Bacon's Abridgment, verbo Error. M. No. 3. And all the cases there cited appear to be of sales to strangers.

Thus it is said, " If a man recovers damages and hath execution by *fieri facias*, and upon the *fieri facias* the Sheriff sells to a STRANGER a term for years, and after judgment is reversed the party shall be restored only to the money for which the term sold, and not the term itself ; because the Sheriff hath sold it by command of the writ of *fieri facias*. Ibid.

So Tidd says, " And so as the writ be not void, it is a good justification, how-

<div style="margin"></div>

GRAHAM
v.
EAGAN.

ever irregular, and the *purchaser* will gain a title under the Sheriff ; *for it would be very hard if it should be at the peril of the purchaser under the fieri facias, whether the proceedings were regular or not.*" 2 Tidd, 936. (See also page 1129 cited, which has no application). The " purchaser " spoken of by Tidd is evidently a stranger to the writ of error.

It thus appears from the authorities cited, that they do not apply to the case before us.

The writ of *fieri facias* has been introduced into our system, it is true, from the common law. But it does not follow, that the rules governing writs of error on a reversal of a judgment are precisely applicable to a reversal on appeal under our system.

On the contrary, in the case before us, it is evident that there is a case for *the action* of restitution. It then becomes a question, whether the judgment under it shall be partial or complete. We say, if there is ground for the action at all, it must, according to the principles of the civil law, be a *restitutio in integrum*, as far as the party has capacity to make such restitution.

So far, we have considered this case, or endeavored so to do, upon legal principles.

Now, the argument *ab inconvenienti* is as urgent in favor of the debtor as the creditor.

The judgment debtor, by accident, as in this case, is sometimes prevented from taking a suspensive appeal. In other cases, he is too poor to give security. If he gives up property on execution, he waives his appeal. Our law, therefore, compels the appellant under a devolutive appeal to remain passive. He is, therefore, subject to oppression, and sometimes injustice, unless the restitution is as ample and complete as the party occasioning the injury has power to make it.

Judgment affirmed.