292 So.2d 557 (1973)
Mrs. Cordella R. REED, Natural Tutrix of the minors, Helen Reed, et al., Plaintiffs-Appellants-Relators,
v.
John H. MEAUX, Defendant-Appellee-Respondent.
No. 52661.
Supreme Court of Louisiana.
September 24, 1973.
On Rehearing March 25, 1974.
Rehearing Denied April 26, 1974.
*558 Charles D. Viccellio, Emmett C. Sole, Stockwell, St. Dizier, Sievert & Viccellio, Lake Charles, for plaintiffs-applicants.
Jerry G. Jones, Jones & Jones, Cameron, for defendant-respondent.
*559 TATE, Justice.
The plaintiffs sue to annul the seizure and judicial sale of immovable property under executory proceedings. La.C.Civ.P. Arts. 2631-2644. The court of appeal affirmed the trial court's dismissal of their suit. 262 So.2d 570 (La.App.3d Cir. 1972).
We granted certiorari, 262 La. 1085, 266 So.2d 219 (1972), primarily to resolve an issue about which there are conflicting expressions and decisions in the jurisprudence: Where a mortgagee procures an order of seizure and sale via executory proceedings without strict compliance with the statutory requirements therefor, and where the mortgagor-defendant does not enjoin or appeal the sale, may the latter nevertheless subsequently annul the sale because of such procedural defects, at least when the property sold remains in the hands of the mortgagee-adjudicatee and no good faith third person's rights intervene?

I.
Before discussing the present facts and issue, we deem it advisable to describe the legal context in which they arise.
An executory proceeding in Louisiana is an in rem action derived from the civil law; it provides a simple, expeditious, and inexpensive procedure by which creditors may seize and sell property upon which they enjoy a mortgage or privilege. Buckner v. Carmack, 272 So.2d 328 (La. Sup.Ct.1973); McMahon, The Historical Development of Executory Procedure in Louisiana, 32 Tul.L.Rev. 555 (1958). By an executory proceeding, a creditor may effect ex parte "the seizure and sale of property, without previous citation and judgment, to enforce a mortgage or privilege thereon evidenced by an authentic act[1] importing a confession of judgment".[2] La.C.Civ.P. Art. 2631.
To exercise his right to obtain this ex parte order from the Court, La.C.Civ.P. Art. 2638, the creditor must submit with his petition authentic evidence or its statutory equivalent "necessary to prove his right to use executory process". La.C. Civ.P. Art. 2635. This requirement includes not only the instruments evidencing (1) the obligation secured by the mortgage or privilege and (2) the mortgage or privilege importing a confession of judgment, but also (3) evidence "necessary to complete the proof of plaintiff's right to use executory process." La.C.Civ.P. Art. 2635.
Article 2635 concludes: "This requirement of authentic evidence is relaxed only in those cases, and to the extent, provided by law." The succeeding two articles list some of the instances where the authentic proof requirement is relaxed and a statutory equivalent is permitted. Article 2636 lists certain documentary evidence "deemed to be authentic", such as certified copies. Article 2637 then lists the evidence which need not be authentic, but which may be proved by a verified petition or by affidavit instead of by authentic acts.
Article 2637's listing of affidavit requirements includes "evidence as to the proper party defendant" and evidence "as to the necessity for appointing an attorney at law to represent an unrepresented defendant."[3] Both of these requirements were breached in the instant case, as will be noted.
*560 The defendant may raise defenses and procedural objections to an executory proceeding either by suspensive appeal or by injunction. La.C.Civ.P. Art. 2642. He may enjoin the sale, "if the procedure required by law for an executory proceeding has not been followed", La.C.Civ.P. Art. 2751, among other reasons.
Executory process, entitling a creditor to seize the debtor's property without citation or the usual delays or formal judgment, is regarded as a harsh remedy requiring, for its use, a strict compliance by the creditor with the letter of the law. Myrtle Grove Packing Co. v. Mones, 226 La. 287, 76 So.2d 305 (1954) and the many decisions cited therein. It has long been settled that every muniment of title to the note and mortgage, and every link of evidence necessary to permit the creditor to exercise this remedy against the debtor, must be in authentic evidence or its statutory equivalent. Miller, Lyon & Co. v. Cappel, 36 La.Ann. 264 (1884) and succeeding jurisprudence. See, e. g., Margolis v. Allen Mortgage & Loan Corp., 268 So. 2d 714 (La.App.4th Cir. 1972).
Thus, where the technical requirements for the use of executory process are not met, the debtor defendant may by injunction or appeal annul the seizure and prevent the sale.

II.
However, and this brings us to our present issue: what if despite procedural irregularity the creditor does sell the property via executory proceedings? Under what circumstances, if any, may the debtor complain of such irregularities after the sale if he has failed to prevent it by injunction or suspensive appeal?
The defendant does not contest that, if the property is in the hands of an innocent third person, the debtor is estopped or has no cause of action to annul the sale.[4] Under long-settled jurisprudence, in such circumstances the general rule is that, once the property has been sold to one other than the mortgagee, the mortgagor cannot annul the sale and recover the property because of defects which he might have urged prior to the sale. Continental Securities Corp. v. Wetherbee, 187 La. 773, 175 So. 571 (1937); Cullotta v. Grosz, 173 La. 83, 136 So. 95 (1931); Huber v. Jennings-Heywood Oil Syndicate, 111 La. 747, 35 So. 889 (1904).[5]
Thus, as between them, the mortgagor-defendant must bear the consequences of his failure to prevent the sale, despite irregularities in proof, rather than an innocent purchaser.
Nevertheless, the jurisprudence recognizes that, even if he fails to appeal or enjoin the sale, the mortgagor-defendant in an executory proceeding may by a subsequent direct action annul the sale, if the mortgagee is the adjudicatee at the sale and is still in possession of the property sold at it. Reid v. Federal Land Bank of New Orleans, 193 La. 1017, 192 So. 688 (1939); Viley v. Wall, 154 La. 221, 97 So. 409 (1923); Cross on Pleading, Sections 305-310 (esp. 310) (1885); Note, 24 La.L. Rev. 894, 897 (1964).[6] Since an order of *561 sale is not a judgment in the strict legal sense, Harrod v. Voorhies' Administratrix, 16 La. 254 (1840), an action to annul it is not governed by the procedure or prescription applicable to actions of nullity of judgments, now La.C.Civ.P. Arts. 2001-2006.[7] Pons v. Yazoo & M. V. R. R., 122 La. 156, 47 So. 449 (1908); Stapleton v. Butterfield, 34 La.Ann. 822 (1882);[8] as well as implicitly by the decisions previously cited in this paragraph and footnote 6 above.
Most of the decisions cited in the previous paragraph concerned either fraud or failure to serve proper notice on the debtor, in permitting the mortgagor to annul for procedural defect a sale under executory process. They could thus possibly be rationalized as affording the remedy only when the debtor had no knowledge of the irregularities complained of and thus no reasonable opportunity to raise them prior to the sale.[9]
Nevertheless, based on dicta in Viley v. Wall, 154 La. 221, 97 So. 409 (1923) (to be discussed more fully below), a line of intermediate court decisions has held that the mortgagee may, even though he neither appealed nor enjoined the sale under executory process, by his subsequent direct action annul it for procedural defects, if the property is still in the hands of the mortgagee as adjudicatee at the sale:
Powell v. Carter, 233 So.2d 369 (La. App.1st Cir. 1970), cert. denied ("no error of law"), 256 La. 269, 236 So.2d 37 (1970) (the seizing creditor did not produce authentic evidence of the transfer of the notes seized upon); Tapp v. Guaranty Finance *562 Co., 158 So.2d 228 (La.App.1st Cir. 1963), cert. denied ("the result is correct"), 245 La. 641, 160 So.2d 228 (1964), Noted, 24 La.L.Rev. 894 (1964) (lack of authentic evidence of endorsement)[10]; and Doherty v. Randazzo, 128 So.2d 669 (La. App.4th Cir. 1961), Noted 22, La.L.Rev. 845 (1962) (insufficient authentic evidence). See also: White Motor Co. v. Piggy Bak Cartage Corp., 202 So.2d 294 (La.App.4th Cir. 1967)[11]; Mack Trucks, Inc. v. Dixon, 142 So.2d 605 (La.App.4th Cir. 1962).
In conflict with these decisions, at least in rationale, are Jambois O. & M. Machine Shop, Inc. v. Dixie Mill Supply Co., 218 So.2d 672 (La.App.4th Cir. 1969), discussed 30 La.L.Rev. 307-08 (1969)[12] and Ford Motor Credit Co. v. Herron, 234 So.2d 517 (La.App.1970). Broadly stated, these cases may be construed as holding that, where authentic evidence proves a debt is due, the debtor may not after the sale attack it for procedural defect if he did not enjoin or suspend the sale. For instance, in the absence of fraud or lack of notice, Jambois refused to annul the sale as to the property still in the mortgagee-adjudicatee's possession, although the executory proceedings leading to the sale were defective in that the chattel mortgage was not proven to have been authorized by resolution of the debtor corporation.[13]
Neither of the latter two intermediate decisions discussed this court's opinions in League Central v. Montgomery, 251 La. 971, 207 So.2d 762 (1968), Noted, 29 La.L. Rev. 405 (1969) and Viley v. Wall, 154 La. 221, 97 So. 409 (1923). We conclude that, in the respect noted, these intermediate decisions are in conflict with the rationale of the League Central and Viley decisions of this court and that the cited Powell, Tapp, and Doherty cases are in accord and were correctly decided by the intermediate courts.
Viley v. Wall primarily held that a sale under executory process could be annulled *563 for fraud where the property was still in the hands of an adjudicatee who had participated in the fraud. However, in overruling the contention that the sale could not be attacked because the defendant had neither appealed nor enjoined the sale, the court stated, 154 La. at 229, 97 So. at 411: "We have carefully examined the jurisprudence and have been unable to find any decision sustaining this view; nor have defendants cited any case so holding where the property had not passed out of the hands of the purchaser at such sale, and who was charged with knowledge of and participation in the . . . nullities or illegalities upon which the same was attacked." Cf. also Graham v. Eagan, 15 La.Ann. 97 (1860).
In League Central v. Montgomery, this court held that the seizing creditor who provoked the sale under executory process could not obtain a deficiency judgment. It so held on the basis of technical insufficiency (the creditor's employee rather than a witness signed the acknowledgment) in the authentic proof used to obtain the order of seizure and sale. The court then stated: "* * * if improper authentic evidence was filed so as to render the executory proceedings null, then any action based upon the executory proceedings is likewise null" (except as "to an innocent third party" purchasing at the sale), even though the debtor had failed to oppose the sale after proper notice. 251 La. 971, 207 So.2d at 765. The court reiterated that, even where the sale is to the third person who is afforded protection, nevertheless "the executory process is still null." 207 So.2d at 765, though the third person's rights are protected.
In Powell v. Carter, cited above, the intermediate court fully discussed the applicable jurisprudence. In annulling a sale for lack of authentic proof, the decision reiterated, 233 So.2d at 376, the holding in similar effect in Doherty, cited above, at 128 So.2d at 672-673: "Defendant herein was both the mortgage creditor who initiated the executory proceedings and the adjudicatee at the sale of the property. Not only is the purchaser charged with the knowledge of the nullity upon which the order was improvidently issued, but he was also responsible for the fatal defect, i. e., failure to produce authentic evidence.. . .."
Under the holdings of these cases, the mortgagor-defendant in an executory proceeding may prevent a deficiency judgment, or may annul a sale if the property is still in the hands of the mortgagee-adjudicatee, on any ground for which he could have enjoined or appealed from the sale, even though he failed to take any such step to prevent it. (If, however, he does attempt to enjoin the sale, he cannot later collaterally attack the adverse judgment ordering the sale by subsequent direct action. Allen v. Commercial National Bank of Shreveport, 243 La. 840, 147 So.2d 865 (1962).)

III.
This conclusion is determinative of the present issue. One of the notes secured by mortgage was executed by the father of the children who were defendants in the executory proceedings. His death and the children's heirship, i. e., "evidence as to the proper party defendant", was not proved by affidavit or verified petition, as required by Article 2637. As to all notes sued upon, all of the children and the mother-tutrix of the minors were non-residents, so that an attorney was required to be appointed to represent them, Article 2674; this circumstance, i. e., "evidence. . . as to the necessity for appointing an attorney at law to represent an unrepresented defendant", was likewise not proved by affidavit or verified petition, as required by Article 2637.
Thus, had the defendants in the executory proceeding sought to, they could have enjoined the sale for non-compliance with "the procedure required by law for an executory proceeding." Article 2751. Likewise, under League Central, Viley v. Wall, and their progeny cited above, although the *564 debtors failed to enjoin it, the executory process and the sale by reason thereof is nevertheless vitiated as against them because of the creditor's failure to comply with the strict procedural requirements upon which was founded his right to proceed ex parte against the debtors in this exceptional manner. The property improperly seized and sold under executory process and still in the creditor's possession must be returned to the debtors.[14]

Decree
For the foregoing reasons, we reverse the judgment of the previous courts, which had dismissed the plaintiffs' suit; and it is now ordered, adjudged, and decreed that there be judgment in favor of the plaintiffs, Cordella R. Reed, Tutrix of the minors Helen Reed, Hazel Reed, and Doris Reed, and of the major children, Patricia Reed Batiste, Betty Reed Young, Robert Reed, and Paul Reed, annulling the sheriff's sale of March 4th, 1970 and vacating the order authorizing it and cancelling the inscription of the sale upon the conveyance records, insofar as these plaintiffs are concerned, and thus restoring to them record title and possession of the property described as:
Lot 8 of the Partition of the Frank Reed Estate as per plat recorded in Book 133 at page 292 of the records of Cameron Parish, Louisiana, situated in the Northeast Quarter (NE/4) of Section 1, Township 15 South, Range 7 West.
The defendant-appellee is to pay all costs of these proceedings.
Reversed and rendered.
BARHAM, J., concurs and assigns reasons.
MARCUS, J., dissents with assigned reasons.
SUMMERS, J., dissents and assigns reasons.
SANDERS, C. J., dissents and assigns written reasons.
BARHAM, Justice (concurring).
I concur in the result. When an attorney for an absentee is appointed by the court, he has the obligation of raising the issue of any procedural defects in the executory proceedings. The procedural tools of injunction and appeal are available to him to protect the absentee. It is his obligation to urge during the course of the executory proceedings, as required by law, the defenses now claimed by these absentees. The procedural defects here do not concern me as much as does the denial of due process by reason of the action and non-action of the attorney for the absentees.
Meaux filed a petition for executory process on January 13, 1970 and attached thereto certified copies of the mortgages and the original notes which were the subject of the suit. In the unverified petition the mortgagee, Meaux, alleged that Henry Reed had died on May 5, 1964, that the named defendants were non-residents, that there was need for appointment of an attorney to represent the absent defendants, and that no succession had been opened for Henry Reed. Meaux further alleged the balance due on the mortgage indebtedness evidence by the three notes and attached to the petition his affidavit setting forth his ownership of the notes and the balance due on them.
On January 9, 1970, the trial court appointed an attorney to represent the absent defendants and ordered that executory process be issued as prayed for in Meaux's petition. On that same date, the appointed *565 attorney accepted service of the petition, waived citation, and reserved all rights of the defendants. A notice of seizure and sale was served on the appointed attorney on January 27, 1970, advising that the mortgaged property would be sold on March 4, 1970. Using addresses furnished him by Meaux's counsel, the attorney addressed letters to defendants which were returned unclaimed, the defendants having moved from the respective addresses supplied. Thereafter, the property at issue was sold at public auction without appraisement on March 4, 1970, to Meaux, the mortgagee, for $300. No opposition to the sale was raised, no application for an injunction to arrest the seizure and sale was filed, and no appeal was taken within the time delays.
On May 26, 1970, the plaintiffs filed this action to annul and set aside the sheriff's sale on grounds that the third mortgage note was not paraphed for identification with the mortgage, the petition for executory process was not verified as required by law, and the writ of seizure and sale was issued prematurely, having been issued prior to notice of demand for payment and before the delays required by law. The trial court overruled exceptions of res judicata and no right or cause of action filed by Meaux but subsequently entered judgment in his favor, finding that the third mortgage note, though clearly not in authentic form as required for executory process, was mere "surplusage" since the proceeds derived from the foreclosure sale were insufficient to satisfy the obligations on either the first or second notes, which notes were in proper authentic form and were sufficient to establish Meaux's right to use executory process as a means of enforcing them. The trial court further found that Meaux's failure to allege the death of Henry Reed and the other facts alleged in his petition by means of a verified petition, supplemental petition or affidavits, as authorized by Code of Civil Procedure Article 2637, did not render the executory proceeding and the foreclosure sale thereunder absolutely null and was a defect which should have been asserted by enjoining the executory proceedings or by suspensively appealing the order directing the issuance of the writ of seizure and sale. Regarding the contention that the sale was null because the writ was issued without notice of demand for payment and before the delays required by law for issuance, the trial court found the contention without merit for the reason that such delays and a demand notice are not required when a mortgage debtor waives them in the act of mortgage, as was done in this instance.
The Court of Appeal affirmed the judgment of the trial court, adopting as its own (but with omissions insignificant here) the trial court's written reasons for judgment.
Plaintiffs have not directly challenged the constitutionality of Louisiana's executory proceedings in light of the United States Supreme Court's decision in Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972). Nevertheless, the plaintiffs do raise the issue of due process and contend that the notice requirements under our executory process, designed to give the mortgage debtor an opportunity to protect his property rights, have not been met in this case. This Court, in the case of Buckner v. Carmack, 272 So.2d 326 (1973) has held that our statutes relating to executory process are constitutional and sales thereunder are not invalidated by the United States Supreme Court's decision in Fuentes, supra. In Buckner, and in Ross v. Brown Title Corporation, 356 F.Supp. 595 (E.D.La.1973), a case in which Louisiana executory proceedings were upheld as constitutional by a federal three-judge court, it is noted that in our proceedings the debtor must be given notice that the writ of seizure and sale has issued. (The court in Ross continues by saying "* * * Subsequent to this notice, but prior to any actual taking of the immovable property, the debtor has thirty-three days in which to take the steps necessary to obtain a hearing on the merits of the defenses which he asserts * * *").
*566 In the case we consider here the questions of whether our Code of Civil Procedure requirement of notice for payment is sufficient notice, whether such notice can be waived, and whether our codal scheme for executory process is constitutional, are not at issue. The issue to be determined is whether failure to give actual notice to these plaintiffs at any time during the proceedings instituted against their property constitutes a denial of due process under the particular circumstances of this case.
Upon appointment of an attorney to represent the defendants who were alleged, in an unverified petition, to be absentees and non-residents, letters were sent by the appointed attorney to the defendants at their last known addresses as supplied by the foreclosing mortgagee's counsel. When these letters were returned undelivered, there apparently was no further effort made by anyone to learn the current whereabouts of any of the defendants, although, for example, the brother-in-law of Cordella Reed (decedent Henry Reed's brother) was living in and available in Cameron Parish and had paid the taxes due on the property each year for the widow and her children. The executory proceedings were simply carried on to a satisfactory conclusion (satisfactory, at least, to the mortgagee) without further ado.
It is clear that such "notice" simply cannot be effective due process notice, even without a consideration of the effect of the United States Supreme Court declarations in Fuentes. However, in that case the prior hearing and notice required in order that due process may be afforded any person whose property is taken is discussed as follows: "* * * We do not question the power of a State to seize goods before a final judgment in order to protect the security interest of creditors so long as those creditors have tested their claim to the goods through the process of a fair prior hearing. . . Since the essential reason for the requirement of a prior hearing is to prevent unfair and mistaken deprivations of property, however, it is axiomatic that the hearing must provide a real test. `(D)ue process is afforded only by the kinds of "notice" and "hearing" which are aimed at establishing the validity, or at least the probable validity, of the underlying claim against the alleged debtor before he can be deprived of his property * * *.'"
Basic due process is denied when property of another is taken and sold without actual notice when no serious attempt is made to give actual notice so that the owners of the property would have advantage of the protections provided in our present Code when notice of seizure and sale is given. I would hold the practice followed under the facts of this case is an unconstitutional application of our present law and a denial of due process.
I respectfully concur.
MARCUS, Justice (dissenting).
I respectfully dissent. Defendant may raise defenses and procedural objections to an executory proceeding by suspensive appeal or injunction. Articles 2642 and 2751, C.C.P. The ruling that the mortgagor-defendant in an executory proceeding may also annul a sale as long as the property is still in the hands of the mortgagee-adjudicatee, on any ground for which he could have enjoined or appealed from the sale, even though he failed to take any step to prevent it, is jurisprudentially creating another remedy which is not provided for in the Code of Civil Procedure.
SUMMERS, Justice (dissenting).
This is a suit to annul and set aside a sheriff's sale at public auction arising out of a foreclosure by executory process. The nullity was denied by the trial court, and this judgment was affirmed by the Third Circuit, 262 So.2d 570, La.App. Certiorari was granted on plaintiffs' application. 262 La. 1085, 266 So.2d 219.
The foreclosure sale sought to be annulled is based upon three separate mortgage *567 notes affecting approximately fifteen acres of land belonging to the mortgagors in Cameron Parish. All three mortgages import confession of judgment and authorize proceeding by executory process. The plaintiffs in this nullity action are the mortgagors in those transactions. John H. Meaux, the defendant, is the mortgagee.
The first mortgage in authentic form and the promissory note identified therewith were executed by Henry Reed for $300, dated April 22, 1963.
Thereafter Henry Reed died intestate in Cameron, Louisiana, on May 5, 1964 survived by seven children. In tutorship proceedings Cordella Reed, surviving spouse of Henry Reed, was appointed natural tutrix of five of the children issue of their marriage who were then minors. She obtained authorization of court and executed for herself, and on behalf of the five minor children, a second mortgage and note, also in authentic form, in favor of John H. Meaux, in the amount of $700, dated January 14, 1966.
A third mortgage and note for $600, executed on June 14, 1966, was signed by Cordella Reed and Patricia Reed Batiste and Betty Reed Young. This note was not paraphed for identification with the mortgage as required by law.
Certified copies of the mortgages and the originals of the notes sued upon were attached to the petition for executory process. The petition alleged the balance due on the mortgage indebtedness evidenced by the three notes; the death of Henry Reed; the names of his surviving children and the confirmation of Cordella Reed as natural tutrix of those who were minors. The petition also alleged that the succession of Henry Reed was never opened, no succession representative was ever appointed and no administration was being conducted. It further alleged that all defendants in the foreclosure proceedings were nonresidents of the State, their whereabouts were unknown, and an attorney should be appointed to represent them. The petition was not verified. However, an affidavit was attached to the petition setting forth the balance due on the three mortgage notes, which, incidentally, were on their face then long past due.
On this basis an attorney was appointed to represent the absent defendants, and executory process was ordered.
The attorney appointed to represent the defendants accepted service of the petition for executory process, waived citation, and reserved all rights of the defendants on January 9, 1970. He was served on January 27, 1970 with a notice of seizure and sale, advising that the property would be sold on March 4, 1970. He, therefore, addressed letters to defendants in Texas at their last known address furnished to him by counsel for plaintiff. All letters were returned unclaimed, defendants having moved, their whereabouts being unknown to defense counsel.
The proceedings were thereafter carried on without opposition, the property being sold on March 4, 1970 without appraisement. According to representations in briefs, the property was sold to John H. Meaux, the mortgagee, for $300. No application for injunction to arrest the seizure and sale was filed, nor was any appeal taken in the cause.
This action in nullity was filed on May 26, 1970. It attacks the executory proceedings on three grounds: (1) that the third mortgage note was not paraphed for identification with the mortgage; (2) that the petition for executory process was not verified as required by law; and (3) the writ of seizure and sale issued in compliance with the order of executory process was premature, having been issued prior to notice of demand for payment.
The issues are presented by an exception of no right or cause of action and res judicata filed by Meaux, and an answer in the form of a general denial. Based upon the contention that no ground prescribed by Articles 2002-2004 of the Code of Civil *568 Procedure was alleged for nullity of the judgment, defendant contends that plaintiffs' remedy, if any, was to enjoin the seizure and sale or to appeal suspensively from the order of executory process, and, having failed to do so, the order, seizure and sale are final and the exception of res judicata should be maintained. I find defendant's position well taken.

I.
Article 2004 of the Code of Civil Procedure provides that "a final judgment obtained by fraud or ill practices may be annulled.. . ." Included within the contemplation of the "ill practices" referred to in this article are vices of substance which arise by plaintiff's failure to supply the authentic evidence necessary to prove a creditor's right to use executory process to enforce a mortgage. Among the exhibits the creditor must attach to his petition are the authentic evidence of the note secured by the mortgage, the authentic act of mortgage importing a confession of judgment and any judgment, judicial letters, order of court, or authentic act necessary to complete the proof of plaintiff's right to use executory process. La.Code Civ.P. art. 2635.
Authentic evidence to support every link in the necessary chain of evidence in an executory proceeding is the very foundation of that action. Miller, Lyon & Co. v. Cappel, 36 La.Ann. 264 (1884). Without the proper authentic evidence, executory proceedings cannot be had. League Central Credit Union v. Montgomery, 251 La. 971, 207 So.2d 762 (1968); Li Rocchi v. Keen, 242 La. 111, 134 So.2d 893 (1961). The rationale of these decisions is based in part upon the exceptional character of the remedy afforded the creditor by executory process, permitting him to seize and sell property without previous citation and judgment. La.Code Civil P. art. 2631. Since executory process is prohibited unless this authentic evidence accompanies the petition, a proceeding by executory process in contravention of this prohibitory law is void, although the nullity be not formally directed. La.Civil Code art. 12.
As previously stated, one of the grounds alleged for nullity is that the note secured by the third mortgage is not paraphed for identification therewith.
It will be recalled that three mortgages are involved. There is no contention that the first two, dated April 26, 1963 in the sum of $300 and May 5, 1964 in the sum of $700, failed to conform with all formalities necessary to satisfy the requirements of authentic and proper form. In addition, it is uncontroverted that the mortgaged property was sold at public sale to the mortgagee for $300. This bid price was obviously insufficient to satisfy the full amount of principal, interest and attorneys' fees on the first note alone. There was, therefore, nothing to apply to the second or third mortgage.
Plaintiffs, recognizing that the first two notes and mortgages were in authentic forms, contend nevertheless that the entire executory proceeding is null and void because the third note is not paraphed and for that reason is not in authentic form. It is correct to say that the third mortgage note is not in authentic form because it is not paraphed; however, no authority is cited to otherwise support plaintiffs' position and I do not agree that the entire proceeding is void.
Either of the first two mortgages was sufficient to entitle the foreclosing creditor to executory process. Each authorized the sale at executory process without appraisement, the procedure followed in this case. And since the identical result could be accomplished without reliance upon the third mortgage, the fact that it was not in authentic form does not affect the validity of the proceeding. As the trial judge observed, under the circumstances of this case the third mortgage was mere "surplusage", and its deficiency had no effect on these proceedings.

*569 II.
What is the effect, in this case, of the foreclosing creditor's failure to verify the petition for executory process?
The requirements of authentic evidence under Article 2635 of the Code of Civil Procedure are limited to evidence of: (1) the mortgage or privilege on the property sought to be seized and sold; (2) the amount of the indebtedness sought to be enforced; and (3) the creditor's right to enforce the mortgage or privilege under executory process. Buckner v. Carmack, 272 So.2d 326 (La.1973).
Proof of other facts is covered by the following language of Article 2637 of the Code of Civil Procedure:
Evidence as to the proper party defendant, or as to the necessity for appointing an attorney at law to represent an unrepresented defendant, or of the breach or occurrence of a condition of the act of mortgage or privilege maturing the obligation, need not be submitted in authentic form. These facts may be proved by the verified petition, or supplemental petition, or by affidavit submitted therewith.
Plaintiffs assert there is no verification or affidavit to prove: (1) the death of the mortgagor Henry Reed; (2) that Henry Reed's succession was not opened; and (3) the necessity for the appointment of an attorney at law to represent the nonresident defendants, some of whom were minors. The proof of these facts does not depend upon the same rules applicable to proof of the mortgage, the note, and the creditor's right to enforce the mortgage. These latter facts, as has been shown, are required to be proved by authentic evidence, and failure to meet this requirement renders the executory proceeding absolutely void. On the other hand, proof of the death of the mortgagor, that his succession is not open, and the necessity for the appointment of an attorney at law to represent the non-resident defendants may be by verified petition or affidavit. And when this proof is not furnished a defense may be asserted either through an injunction proceeding to arrest the seizure and sale or a suspensive appeal from the order directing the issuance of the writ of seizure and sale, or both. La.Code Civ.P. art. 2642.
The civilian executory proceeding rests upon the theory that a seizure of the property subject to the mortgage or privilege may be made after demand for payment, giving the debtor an opportunity to assert any valid defense. Defenses may be raised either before or after seizure. On the seizure may take place immediately if the demand for payment is waived. But the debtor ". . . must do so either through an opposition to arrest the seizure and sale, or through an appeal from the order directing the seizure and sale." La. Code Civ.P. art. 2642, Comments; Buckner v. Carmack, 272 So.2d 326 (La.1973); General Motors Acceptance Corp. v. Anzelmo, 222 La. 1019, 64 So.2d 417 (1953). See also Boatmen's Savings Bank v. Wagenspack, 12 F. 66 (E.D.La.1882).

III.
The final basis for the claim that the executory proceeding is null is that the writ of seizure and sale issued in compliance with the order of executory process was premature, having been issued prior to notice of demand for payment.
This contention is answered by the following pertinent language from Article 2639 of the Code of Civil Procedure: "The demand for payment need not be issued if it has been waived by the debtor in the act of mortgage or privilege; and in such event, the clerk shall issue the writ of seizure and sale immediately." Article 2640 also provides: "The sheriff shall serve upon the defendant the demand for payment provided by Article 2639, unless waived by the debtor as provided therein."
In the mortgages the debtors especially waived "the three days delay for payment before issuance of order of seizure and sale."
*570 In the proceedings sought to be nullified, no injunction was applied for to arrest the seizure and sale and no suspensive appeal was filed. Hence the order to proceed by executory process became final, and the plea of res judicata interposed to this suit for nullity must be sustained.
Though giving lip service to the principle, the majority opinion has failed to apply the basic theory on which civilian executory proceeding rests. It is that a seizure of the property subject to the mortgage or privilege may be made immediately on the order of the court issued on the ex parte application of the creditor. It is not a contradictory proceeding at all, but an ex parte one to which the debtor has already given his assent. The defendant can assert any valid defenses to the seizure after being notified, but he must do so either through an opposition to arrest the seizure and sale, or by suspensive appeal from the order. Defendants did neither here. See Comment, La.Code Civ.P. art. 2642. The debtor is afforded an adequate opportunity to assert his defenses in this manner. Failure to do so prevents a later suit attacking the proceedings after the sale.
Moreover, I cannot agree with the assumptions, conjecture and speculation which, to a considerable extent, form the basis for the Court's opinion.
I respectfully dissent.
SANDERS, Chief Justice (dissenting).
I subscribe to the forceful dissents of Mr. Justice Summers and Mr. Justice Marcus. Their analyses demonstrate the error underlying the majority opinion.
It should be emphasized that the 1970 judicial sale is set aside, not for the lack of authentic evidence of the debt and mortgage, but because of the absence of an affidavit identifying the defendants and attesting to their non-residence. See LSA-C.C.P. Art. 2637.
The omission of the affidavit, in my opinion, was at most a technical flaw, cured by the failure to oppose the executory proceedings. In fact, the relators make no contention that they were improper parties to the executory proceeding or that they were not in fact non-residents of the state at the time of the proceeding.
By this decision, the majority creates an additional ground for nullifying a judicial sale under executory process. In my opinion, the result reached is erroneous.
For the reasons assigned, I respectfully dissent.

ON REHEARING
SUMMERS, Justice.
We granted a rehearing to set at rest the differences prevailing in the views of a majority of the Court.
The suit involves an action to annul and set aside a sheriff's sale of real estate at public auction arising out of a foreclosure by executory process. The nullity was denied by the trial court, and the judgment was affirmed by the Third Circuit, La. App., 262 So.2d 570. Certiorari was granted on plaintiff's application. 262 La. 1085, 266 So.2d 219.
The foreclosure sale sought to be annulled is based upon three separate notes secured by three mortgages affecting approximately fifteen acres of land belonging to the mortgagors in Cameron Parish. All three mortgages import confession of judgment and authorize proceeding by executory process. The plaintiffs in this action to set aside are the mortgagors or their successors in those transactions.
The first mortgage in authentic form and the promissory note identified therewith were executed by Henry Reed for $300, dated April 22, 1963.
Thereafter Henry Reed died intestate in Cameron, Louisiana, on May 5, 1964 survived by seven children. In tutorship proceedings Cordella Reed, surviving spouse of Henry Reed, was appointed natural tutrix of five of the children issue of their marriage, who were then minors. She obtained authorization of court and executed for herself, and on behalf of the five minor *571 children, a second mortgage and note, also in authentic form, in favor of John H. Meaux, in the amount of $700, dated January 14, 1966.
A third mortgage and note for $600, executed on June 14, 1966, was signed by Cordella Reed, Patricia Reed Batiste and Betty Reed Young. This note was not paraphed for identification with the mortgage as required by law.
Certified copies of the mortgages and the originals of the notes sued upon were attached to the petition for executory process. The petition alleged the balance due on the mortgage indebtedness evidenced by the three notes; the death of Henry Reed; the names of his surviving children; and the confirmation of Cordella Reed as natural tutrix of those who were minors. The petition also alleged that the succession of Henry Reed was never opened, no succession representative was ever appointed and no administration was being conducted. Further, it was alleged that all defendants in the foreclosure proceedings were non-residents of the State; their whereabouts were unknown, and an attorney should be appointed to represent them. The petition was not verified. However, an affidavit was attached to the petition setting forth the balance due on the three mortgage notes, which, incidentally, were on their face then long past due. On this basis an attorney was appointed to represent the absent defendants, and executory process was ordered.
The attorney appointed to represent the defendants accepted service of the petition for executory process, waived citation, and reserved all rights of the defendant on January 10, 1970. He was served on January 27, 1970 with a notice of seizure and sale, advising that the property would be sold on March 4, 1970. He, therefore, addressed letters to defendants in those proceedings at their last known address in Texas, the addresses having been furnished to him by counsel for plaintiff. All letters were returned unclaimed, defendants having moved. The whereabouts of the defendants were then unknown to their appointed counsel.
The proceedings were thereafter carried on without opposition, the property being sold on March 4, 1970 without appraisement for $300. John H. Meaux was the purchaser according to the mortgagors, and successors of Henry Reed, who are plaintiffs in this action, as alleged in their petition, and as conceded in the answer of John H. Meaux.
This action was filed on May 26, 1970. It attacks the executory proceedings on three grounds: 1) that the third mortgage note was not paraphed for identification with the mortgage; 2) the petition for executory process was not verified as required by law; and 3) the writ of seizure and sale issued in compliance with the order of executory process was premature, having been issued prior to notice of demand for payment.
The issues are presented by an exception of no cause of action, a plea of res judicata and an answer in the form of a general denial filed by Meaux. Based upon the contention that no ground prescribed by Articles 2002-2004 of the Code of Civil Procedure[1] was alleged for nullity of the *572 judgment, defendant contends that plaintiffs' remedy, if any, was to enjoin the seizure and sale or to appeal suspensively from the order of executory process, and, having failed to do so, the order, seizure and sale are final, and the exception of res judicata should be maintained.

I.
The action to set aside a sale by executory process is not governed by Articles 2001 through 2006 of the Code of Civil Procedure prescribing the grounds for nullity of a final judgment. An order of sale is not a judgment in the strict sense, Harrod v. Voorhies' Administratrix, 16 La. 254 (1840), and an action to annul it is not governed by the procedure or prescription applicable to action of nullity of judgments. Pons v. Yazoo & M. V. R. R., 122 La. 156, 47 So. 449 (1908); Stapleton v. Butterfield, 34 La.Ann. 822 (1882). Exhibits the creditor is required to attach to his petition in an action to set aside a sale under executory process include the authentic evidence of the notes secured by mortgage, the authentic act of mortgage importing a confession of judgment and any judgment, judicial letters, order of court, or authentic act necessary to complete the proof of plaintiff's rights to use executory process. La.Code Civ.P. art. 2635.
Authentic evidence to support every link in the necessary chain of evidence in an executory proceeding is the very foundation of that action. Miller, Lyon & Co. v. Cappel, 36 La.Ann. 264 (1884). Without the proper authentic evidence, executory proceedings cannot be had. League Central Credit Union v. Montgomery, 251 La. 971, 207 So.2d 762 (1968); LiRocchi v. Keen, 242 La. 111, 134 So.2d 893 (1961). The rationale of these decisions is based in part upon the exceptional character of the remedy afforded the creditor by executory process, permitting him to seize and sell property without previous citation and judgment. La.Code Civ.P. art. 2631. Since executory process is prohibited unless this authentic evidence accompanies the petition, a proceeding by executory process in contravention of this prohibitory law is void, although the nullity be not formally directed. La.Civil Code art. 12.
As previously stated, one of the grounds asserted for nullity is that the note secured by the third mortgage is not paraphed for identification therewith. It will be recalled that three mortgages are involved. There is no contention that the first two, dated April 26, 1963 in the sum of $300, and May 5, 1964 in the sum of $700, failed to conform with all formalities necessary to satisfy the requirements of authentic and proper form. In addition, it is uncontroverted that the mortgaged property was sold at public sale to the mortgagee for $300. This bid price was obviously insufficient to satisfy the full amount of principal, interest and attorneys' fees on the first note alone, on which there was a $420.20 balance due on January 7, 1970, the total amount past due on the three notes on that date being $2,310.20. Since the bid price was only $300 there was nothing to apply to the second or third mortgage.
Plaintiffs, recognizing that the first two notes and mortgages were in authentic form, contend nevertheless that the entire executory proceeding is null and void because the third note is not paraphed and for that reason it is not in authentic form. It is correct to say that the third mortgage note is not in authentic form because it is not paraphed; however, no authority is cited to otherwise support plaintiffs' position, and we cannot agree that this discrepancy nullifies the entire executory proceeding.
*573 Either of the first two mortgages was sufficient to entitle the foreclosing creditor to enforce payment by executory process. Each authorized the sale at executory process without appraisement, the procedure followed in this case. And since the identical result is accomplished without reliance upon the third mortgage, the fact that it was not in authentic form does not afford ground for nullifying the entire proceeding. As the trial judge observed, under the circumstances of this case the third mortgage was mere "surplusage", and its deficiency had no effect on these proceedings.

II.
What is the effect, in this case, of the foreclosing creditor's failure to verify the petition for executory process?
The requirements of authentic evidence under Article 2635 of the Code of Civil Procedure are limited to evidence of: 1) the mortgage or privilege on the property sought to be seized and sold; 2) the amount of the indebtedness sought to be enforced; and 3) the creditor's right to enforce the mortgage and privilege under executory process. Buckner v. Carmack, 272 So.2d 326 (La.1973). Proof of other facts is covered by the following language of Article 2637 of the Code of Civil Procedure:
"Evidence as to the proper party defendant, or as to the necessity for appointing an attorney at law to represent an unrepresented defendant, or of the breach or occurrence of a condition of the act of mortgage or privilege maturing the obligation, need not be submitted in authentic form. These facts may be proved by the verified petition, or supplemental petition, or by affidavit submitted therewith."
Plaintiffs assert there is no verification or affidavit to prove: 1) the death of the mortgagor Henry Reed; 2) that Henry Reed's succession was not opened; and 3) the necessity for the appointment of an attorney at law to represent the nonresident defendants, some of whom were minors. This argument is not well-founded. The proof of these facts does not depend upon the same rules applicable to proof of the mortgage, the note, or the creditor's right to enforce the mortgage. These latter facts are substantive in character in an executory proceeding. La.Code Civ.P. art. 2002. As such they must be proved by authentic evidence. Failure to meet this requirement renders the executory proceeding void, though the nullity be not decreed. La.Civil Code art. 12. On the other hand, proof of the death of the mortgagor, that his succession has not been opened, and the necessity for the appointment of an attorney at law to represent the nonresident defendant may be by verified petition or affidavit. La.Code Civ.P. art. 2637. These are defects of form. La.Code Civ. P. art. 2002. And when this proof is not furnished a defense may be asserted either through an injunction proceeding to arrest the seizure and sale or a suspensive appeal from the order directing the issuance of the writ of seizure and sale, or both. La. Code Civ.P. art. 2642.[2]
The civilian executory proceeding rests upon the theory that a seizure of the property subject to the mortgage or privilege may be made after demand for payment, giving the debtor an opportunity to assert any valid defenses. Defenses *574 may be raised either before or after seizure. Or the seizure may take place immediately if the demand for payment is waived. But the debtor ". . . must do so either through an opposition to arrest the seizure and sale, or through an appeal from the order directing the seizure and sale." La.Code Civ.P. art. 2642 and Comments to that article. These prerequisites to the action to set aside the sale on the grounds relied upon in this case have not been satisfied. No injunction was applied for to arrest the seizure and sale and no suspensive appeal was taken. Thus the order to proceed by executory process became final.

III.
The final basis asserted for setting aside the sale is that the writ of seizure and sale issued in compliance with the order of executory process was premature, having been issued prior to notice of demand for payment.
This contention is answered categorically by Article 2639 of the Code of Civil Procedure in these words: "The demand for payment need not be issued if it has been waived by the debtor in the act of mortgage or privilege; and in such event, the clerk shall issue the writ of seizure and sale immediately." Article 2640 also provides: "The sheriff shall serve upon the defendant the demand for payment provided by Article 2639, unless waived by the debtor as provided herein."
For the reasons assigned, our original decree herein is set aside, and the judgments of the Court of Appeal and trial court under review are affirmed.
BARHAM, J., concurs.
TATE, J., concurs and assigns written reasons.
DIXON, J., dissents.
CALOGERO, J., dissents.
TATE, Justice (concurring).
The writer concurs in our holding that a sale under executory process may not be set aside for minor procedural defects of form of the nature here raised.
The defects alleged concern the failure to verify a petition which adequately set forth facts establishing the proper defendants. The defects do not go to the essential foundation of the right to proceed under executory process.
The authentic evidence necessary to prove the right to use executory process, including the note, mortgage, and other essential elements proving the debt, are set forth in La.C.Civ.P. arts. 2635, 2636. The defects at issue are those which do not go to the validity of the authentic obligation and which need not be proved by authentic evidence, but may instead be proved by affidavit or verified petition. See La.C.Civ. P. art. 2637.
The majority opinion recognizes that such latter (article 2637) type of defects justify a defense to the seizure executory process, either by injunction or suspensive appeal. La.C.Civ.P. art. 2642. It holds, however, that these minor defects of form cannot be used to set aside a sale, which was not enjoined or appealed. I concur in the majority opinion, because I do not believe it intended to modify the holding in League Central Credit Union v. Montgomery, 251 La. 971, 207 So.2d 762 (1968), that any defect in the executory proceedings can be used as a defense to a deficiency judgment (as contrasted with serving as a ground to set aside a sale.)
I concur also because the holding today does not effect or limit the holding in Powell v. Carter, 233 So.2d 369 (La.App. 1st Cir. 1970), certiorari denied, 256 La. 269, 236 So.2d 37 (1970) ("* * * no error of law * * *."). There, a sale under executory process was set aside, insofar as the property was still in the hands of the original seizing creditor, where there was no authentic evidence to prove that the note sued upon had been transferred to the plaintiff in the executory proceeding. That is, there was no authentic evidence of the transfer of the note from the maker to the plaintiff in the executory *575 proceedings. As Judge Landry pointed out, in permitting the sale to be annulled because of this procedural defect, it was a matter that "relates to the basis or foundation of a creditor's right to proceed against a debtor in an unusual manner. It is so fundamental that [it] vitiates the creditor's right to proceed * * *." 233 So.2d 373. (Italics mine.)
As noted in the court's original majority opinion authored by the present writer, see Footnote 12, it was this reasoning that persuaded the majority, in our original opinion, that the sale should be set aside, even though no injunction had been obtained to prevent the sale and no appeal taken to the order authorizing it. However, the present majority holdingthat defects of form which do not go to the fundamental nature of the obligation or its acquisition, used as a basis for executory process, cannot be used to invalidate a sale to which the creditor is otherwise entitledand the majority's reasoning now persuade me to concur in the majority opinion, since it is subject to the limitations pointed out by the present concurring opinion.
I therefore respectfully concur.
NOTES
[1] An authentic act is one executed before a notary in the presence of two witnesses. La. Civ.C. Art. 2234.
[2] A confession of judgment by authentic act is imported when the obligor acknowledges the obligation secured by mortgage or privilege and confesses judgment whether before or after its maturity, La.C.Civ.P. Art. 2632.
[3] In Louisiana, the appointment of the attorney in the latter instance, La.C.Civ.P. Arts. 2674, 5091, has important procedural consequence; the defendant receives his only notice of the action through such an appointed attorney, La.C.Civ.P. Art. 5094, and the unrepresented defendant is bound by the proceedings conducted against him by virtue of the appointment of this attorney, La.C.Civ.P. Art. 5098.
[4] In accordance with this admission, the defendants do not contest the validity of a mineral lease executed by seizing creditor immediately after the sale. See Footnote 9 below. They do not waive their right for an accounting of the proceeds of the lease and to be substituted as owners-lessors if they prevail in this action.
[5] There are exceptions, however, relating to the adjudicatee at the sale purchasing with notice of a patent substantial defect, see Note, 22 La.L.Rev. 845, 847 (footnote 7), (1962), or by participating in a conspiracy to defraud the mortgagor, Viley v. Wall, 154 La. 221, 97 So. 409 (1923).
[6] The cited note at 24 La.L.Rev. 897, footnote 17, summarizes as follows the cases permitting the mortgagor to annul the sale when the property was sold to the mortgagee and was still in the latter's possession:

"Reid v. Federal Land Bank, 193 La. 1017, 192 So. 688 (1939) (proceedings brought against mortgagor's succession though she was alive; no notice to mortgagor); McDonald v. Shreveport Mut. Bldg. Ass'n, 178 La. 645, 152 So. 318 (1933) (improper advertisement of sale); Ring v. Schilkoffsky, 158 La. 361, 104 So. 115 (1925) (notice improperly served on wife instead of husband who was living separately); Killelea v. Barrett, 37 La.Ann. 865 (1885) (tutor ad hoc appointed to represent minors did not take oath; absolute nullity); Stapleton v. Butterfield, 34 La.Ann. 822 (1882) (mortgage absolutely null; fraud; note enforced by holder with notice of nullity); Birch v. Bates, 22 La. Ann. 198 (1870) (no notice to mortgagor who was out of state at time of sale); Farrell v. Klumpp, 13 La.Ann. 311 (1858) (no notice to mortgagor); cf. Acadian Prod. Corp. v. Savanna Corp., 222 La. 617, 63 So.2d 141 (1953) (sale under writ of fieri facias; no notice to debtor; fraud)."
[7] The action in nullity regulated by these code articles relate to the "nullity of a final judgment." Article 2001. Executory proceedings by definition do not concern such a judgment, since they are used "to effect the seizure and sale of property, without previous citation and judgment." La.C.Civ.P. Art. 2631.
[8] These two decisions held that the one-year prescription actions of nullity of judgments, now La.C.Civ.P. Art. 2004, did not apply and that the appropriate prescription for informalities with regard to sales under executory process was provided by Civil Code Article 3543 applicable to judicial sales.
[9] In the instant case, it is conceded that the defendant tutrix of minor children and the major children heirs had no actual knowledge of the institution of executory proceedings on January 27, 1970 or of the sale on March 4, 1970. The petition alleged that they were non-residents, living in Texas, with present location unknown. The attorney appointed to represent them sent notice at the Texas addresses supplied to them by the attorney for the plaintiff creditor; but these five letters were returned, since the addresses were not correct. The tutrix had been living at a different address in Houston for at least five years before the suit. Although she had corresponded with the creditor shortly before the seizure to see if he wished to buy the land, it is not positively shown that he knew her actual address. When the letters were returned, no effort was made to ascertain a more correct address, such as through the children's uncle, who lived in the small town and paid the taxes on the property. The present suit to annul the sale was brought within three months, as soon as the tutrix learned of it. The 15 acres were bought without appraisement for $300 by the mortgagee. A mineral lease was executed by him on the property on March 5, the day after the sale, for an unshown bonus plus $625 delay rentals each year thereafter. The record further shows that, some five months before the executory proceedings, the Reed heirs had agreed to sell the property for $6,250. The total mortgage debt they owed on the property was $2,301.20. We do not ground our reversal on these facts but simply cite them to illustrate the reasons why the jurisprudence has so strictly held the seizing creditor to literal compliance with the strict requirements for use of executory proceedings.
[10] The Tapp opinion does not make clear that the mortgagee was the adjudicatee. See 24 La.L.Rev. 894. However, while its essential holding is correct that the deficiency judgment should be defeated for such procedural defects whether or not the property was sold to an innocent third person, League Central Credit Union v. Montgomery, 251 La. 971, 207 So.2d 762, 764-765 (1968), its further holding that the sale itself was annulled insofar as a third person could not under League Central or other decisions be sustained if indeed the property had been sold to such third person. Since the only defendant in Tapp was the seizing creditor (and no third person purchaser was made party to this annulment suit), the decision can be deemed to mean only that the sale was annulled insofar as the mortgagee was concerned, not as to any innocent third person.
[11] White Motor Co. recognizes the rule cited, but, because the property was adjudicated to a third person, held that a deficiency judgment must be allowed against the mortgagor-defendant because the sale could not be annulled. This court specifically overruled the holding of the case that a deficiency judgment could be permitted despite procedural defect in obtaining the sale under executory process, pointing out that no interest of the innocent third person purchaser was jeopardized by refusing to allow the mortgagee a deficiency judgment. League Central v. Montgomery, cited above in footnote 10, at 251 La. 971, 207 So.2d 764-765.
[12] The organ of this court, as judge, acknowledges and is persuaded by the criticism of his approval of Jambois, as professor, in the cited law review discussion, by Judge Paul Landry, as organ of the court in Powell v. Carter, 233 So.2d 369, 373 (La.App.1st Cir. 1970). Judge Landry points out that a prounusual manner. It is so fundamental that lates to the basis or foundation of a creditor's right to proceed against a debtor in an unusual manner. It is so foundamental that non-compliance vitiates the creditor's right to proceed." 233 So.2d at 373. In view of this fundamental nature of the defect, the Powell court held it would be inconsistent with this court's decision in League Central to deny the debtor the right to annul the sale as to property improperly seized and sold and still in the creditor's possession.
[13] The trial court had held the debtor in Jambois estopped from attacking the judicial sale by its unconditional acceptance of the proceeds in excess of the amount required to pay the seizing creditor. Ultimately, the appellate court additionally relied upon this principle in denying annulment.
[14] The plaintiffs had also prayed for ten thousand dollars damages caused them by the wrongful seizure and dispossession. This relief was denied by both intermediate courts. The plaintiffs' specifications of error, upon which this writ was granted, did not complain of this denial of the damage claim. It is therefore final, since we ordinarily limit our review to the issues raised by granted application for writs of certiorari. Jordan v. Travelers Ins. Co., 257 La. 995, 245 So.2d 151 (1971).
[1] La.Code Civ.P. art. 2002 provides:

"A final judgment shall be annulled if it is rendered:
"(1) Against an incompetent person not represented as required by law;
"(2) Against a defendant who has not been served with process as required by law and who has not entered a general appearance, or against whom a valid judgment by default has not been taken; or
"(3) By a court which does not have jurisdiction over the subject matter of the suit.
"Except as otherwise provided in Article 2003, an action to annul a judgment on these grounds may be brought at any time." La.Code Civ.P. art. 2003 provides:
"A defendant who voluntarily acquiesced in the judgment, or who was present in the parish at the time of its execution and did not attempt to enjoin its enforcement, may not annul the judgment on any of the grounds enumerated in Article 2002." La.Code Civ.P. art. 2004 provides:
"A final judgment obtained by fraud or ill practices may be annulled.
"An action to annul a judgment on these grounds must be brought within one year of the discovery by the plaintiff in the nullity action of the fraud or ill practices."
[2] La.Code Civ.P. art. 2642, Official Revision Comments provides:

"(a) The whole theory on which the civilian executory proceeding rests is that a seizure of the property subject to the mortgage or privilege may be made immediately on the order of the court issued on the ex parte application of the creditor. It is not a contradictory proceeding at all; but an ex parte one. The defendant can assert any valid defenses to the seizure, but he must do so either through an opposition to arrest the seizure and sale, or through an appeal from the order directing the seizure and sale. See Engelmann-Millar, A History of Continental Civil Procedure 498-501 (1927); General Motors Acceptance Corp. v. Anzelmo, 222 La. 1019, 64 So.2d 417 (1953), noted 14 La.L. Rev. 289 (1953); and Boatmen's Savings Bank v. Wagenspack, 12 F. 66, 4 Woods 130 (5 Cir. 1882)." * * * * *