NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

16-12 consolidated with 16-13


MARY ANDREE PELTIER

VERSUS

JPMORGAN CHASE BANK, N.A., ET AL.


**********
APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. C-2015-3213 C/W C-2015-3341
HONORABLE KRISTIAN DENNIS EARLES, DISTRICT JUDGE

**********

ULYSSES GENE THIBODEAUX
CHIEF JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Marc T. Amy, and Phyllis M. Keaty, Judges.


**AFFIRMED.**


Arthur Daniel Mouton
Davidson, Meaux, Sonnier, McElligott, Fontenot, Gideon & Edwards
P. O. Box 2908
Lafayette, LA 70502-2908
Telephone:  (337) 237-1660
COUNSEL FOR:
    Defendant/Appellee - Michael W. Neustrom, Lafayette Parish Sheriff


Jon Ann Harp Giblin
McGlinchey Stafford, PLLC
301 Main Street - 14th Floor
Baton Rouge, LA 70801
Telephone:  (225) 383-9000
COUNSEL FOR:
    Defendant/Appellee - JPMorgan Chase Bank, N.A.

**Travis J. Broussard**
**Durio, McGoffin, Stagg & Ackermann**
**P. O. Box 51308**
**Lafayette, LA 70505-1308**
**Telephone:  (337) 233-0300**
**COUNSEL FOR:**
**Defendants/Appellees - Alma D. Criddle and John Michael Criddle**

**Mary Andree Peltier**
**In Proper Person**
**2851 Johnston Street - #153**
**Lafayette, LA 70503-3243**
**Telephone:  (337) 781-5157**
**Plaintiff/Appellant**

**THIBODEAUX, Chief Judge.**

This case involves the foreclosure and sale of real property in Lafayette Parish. The mortgagor-plaintiff, Mary Andree Peltier (Ms. Peltier), appeals from the following three judgments: (1) the denial of Ms. Peltier's claim for rescission of the Sheriff's sale and the grant of summary judgment and rule of eviction in favor of third-party purchasers, John and Alma Criddle (the Criddles); (2) the grant of an exception of no cause of action in favor of the Sheriff of Lafayette Parish, Michael W. Neustrom (the Sheriff); and (3) the grant of an exception of no cause of action in favor of JPMorgan Chase Bank, National Association. The various petitions and motions were filed in two consolidated cases in the Fifteenth Judicial District Court of Lafayette Parish, C-2015-3213 and C-2015-3341. The two records are consolidated and docketed in this court as appeal No. 16-12 and appeal No. 16-13, respectively.

Finding no errors on the part of the trial court, and for the following reasons, we affirm the judgment denying Ms. Peltier's claim for rescission of the Sheriff's sale and granting the Criddles' motion for summary judgment and rule for eviction; and we affirm the judgment granting the Sheriff's exception of no cause of action. We also affirm the exception of no cause of action granted in favor of JPMorgan Chase Bank, National Association.

I.

**ISSUES**

We must decide:

(1)    whether the trial court erred in denying Ms. Peltier's claim for rescission of the Sheriff's sale;

(2)    whether the trial court erred in granting the Criddles' motion for summary judgment and rule for eviction;

(3)    whether the trial court erred in granting the exception of no cause of action in favor of the seizing creditor; and

(4)    whether the trial court erred in granting the exception of no cause of action in favor of the Sheriff.

## II.

## FACTS AND PROCEDURAL HISTORY

While there are discrepancies in the facts alleged in Ms. Peltier's petition for rescission and her subsequent allegations, we have determined the salient facts by reconciling the allegations with the exhibits in the record.

In 2003, Ms. Peltier obtained a construction loan for $83,952 with U.S. Department of Agriculture, Rural Development (USRDA). She alleges that the lender required her to obtain a second mortgage for $21,000 with Cameron Bank.

In December 2006, Ms. Peltier obtained a home equity line of credit from JPMorgan Chase Bank, National Association, Home Equity and Consumer Lending Division, in the amount of $74,500. Ms. Peltier alleges that this loan was to pay off Cameron Bank.

In 2009, Ms. Peltier received a letter from Chase Home Finance, LLC notifying her that her mortgage had been sold or transferred on November 20, 2009, to "CPCC Delaware Business Trust, ("Chase")" and that "Chase" was her new creditor. The letter further stated that Chase Home Finance, LLC was the agent for the new creditor and would answer any questions regarding the notice.

2

The letter further stated that the notice did not affect the servicing of her loan and that she should continue to send her mortgage payments to her current servicer.

We note that, while the corporate structure of the numerous JPMorgan Chase & Co. entities is unclear, it appears that the subject entity/creditor/mortgagee, JPMorgan Chase Bank, National Association, had numerous subsidiaries and what we will call sub-subsidiaries. It appears that two of the sub-subsidiaries of the mortgagee were at one time the agent, Chase Home Finance, LLC, and the new creditor, CPCC Delaware Business Trust, though mergers may have changed the status of these entities.

While Ms. Peltier alleges that the home equity line of credit was not a mortgage, the agreement and disclosure clearly state that the revolving line of credit was secured by a mortgage and that Ms. Peltier must maintain insurance on the mortgaged home. The record does not contain the home equity mortgage, but the exhibits indicate that the mortgage was attached as one of the exhibits to the petition for executory process. The equity loan was for a thirty-year period, requiring 120 payments of interest only on the draws posted to the account, and 240 payments of principal and interest.

On October 11, 2012, JPMorgan Chase Bank, National Association, filed a petition for executory process against Ms. Peltier, asserting that the note had been in default since April 25, 2012, and that the mortgagee wished to exercise its right to accelerate the loan. It requested a writ of seizure and sale after all notices and requirements were met. Based upon the exhibits supplied at the time, the petition was granted. Ms. Peltier stated that she was served with the writ of seizure and sale on October 31, 2012, but she continued to work with the bank toward obtaining deferments. The Sheriff began to advertise the property as required, but

3

no action toward physical seizure was immediately taken, and Ms. Peltier remained in the home.

On August 13, 2013, "Chase" sent a letter to Ms. Peltier, informing her that the creditor of her loan was now JPMorgan Chase Bank, National Association, which was the original mortgagee. It stated that the date of the transfer was August 1, 2013, and that evidence of the transfer of ownership of the loan or the instrument securing the loan was recorded in the land records of the county in which the property was located.

In February 2015, Ms. Peltier was again served with a notice of seizure and sale indicating that the sale was to occur on April 22, 2015.

On April 22, 2015, the property was sold in a Sheriff's sale to the Criddles, who were the highest bidders, for $137,500. According to the Sheriff's proces verbal, the property was appraised at $156,000. The proces verbal also showed that the proceeds of $137,500 were distributed to pay off the first mortgage to USRDA, in the amount of $92,667.48, and the second mortgage to JPMorgan Chase, National Association, in the amount of $37,564.52. The remainder was used to pay itemized costs of advertising, appraisal, recordation, cancellation, research, and clerk's and Sheriff's costs. The proces verbal indicated that various recorded acts were cancelled.

The Sheriff's deed in favor of the Criddles was dated April 22, 2015. The deed was recorded on April 30, 2015.

On June 29, 2015, Ms. Peltier filed a petition for damages, for rescission of the Sheriff's sale, and for a declaration of nullity of the deed in favor of the Criddles. She named as defendants: JPMorgan Chase Bank, National Association; Sheriff Michael W. Neustrom; and John and Alma Criddle.

4

The Criddles filed a motion for summary judgment and, having allowed Ms. Peltier to remain in the home rent free for two months after the date of sale, they filed a rule for eviction. Both were granted. The Sheriff and JPMorgan Chase Bank, National Association filed exceptions of no cause of action, which were also granted. Ms. Peltier appeals the judgments against her and the dismissal of her claims for damages, rescission, and nullity.

## III.

## <u>STANDARDS OF REVIEW</u>

"When an appellate court reviews a district court judgment on a motion for summary judgment, it applies the de novo standard of review, 'using the same criteria that govern the trial court's consideration of whether summary judgment is appropriate, i.e., whether there is a genuine issue of material fact and whether the mover is entitled to judgment as a matter of law.'" *Gray v. American Nat'l Prop. & Cas. Co.*, 07-1670, p. 6 (La. 2/26/08), 977 So.2d 839, 844 (quoting *Supreme Serv. & Specialty Co., Inc. v. Sonny Greer, Inc.*, 06-1827, p. 4 (La. 5/22/07), 958 So.2d 634, 638). Peremptory exceptions of no cause of action pose questions of law and are also reviewed de novo. *Washington Mut. Bank v. Monticello*, 07-1018 (La.App. 3 Cir. 2/6/08), 976 So.2d 251, *writ denied*, 08-530 (La. 4/25/08), 978 So.2d 369; *see also Industrial Companies, Inc. v. Durbin*, 02-665 (La. 1/28/03), 837 So.2d 1207. An appellate court may not set aside a trial court's findings of fact in the absence of manifest error or unless it is clearly wrong. *Stobart v. State, Through DOTD*, 617 So.2d 880 (La.1993); *Rosell v. ESCO*, 549 So.2d 840 (La.1989).

## IV.

## <u>LAW AND DISCUSSION</u>

### *The Criddles' Motion for Summary Judgment and Rule for Eviction*

Ms. Peltier's petition to rescind and nullify the sale asserted that JPMorgan Chase Bank, National Association (sometimes referred to herein as "Chase Bank") had sold the loan to CPCC Delaware Business Trust in 2009 and that Chase Bank was not the owner of the loan when it filed its petition for executory process in October 2012. Thus, she asserted that the proceedings by which the house was seized and sold were fundamentally defective where Chase Bank was not the proper party to institute suit. She requested nullity and damages for attorney fees, court costs, expenses, mental anguish, stress, inconvenience and loss of enjoyment of life.

The Criddles sought summary judgment, contending that Ms. Peltier has no remedy for rescinding the sale of the property to innocent third-party purchasers such as themselves *after* the Sheriff has filed the proces verbal and recorded the deed in the conveyance records of Lafayette Parish. They assert that prior to the proces verbal and the recording of the deed, Ms. Peltier could have filed an injunction to arrest the seizure under La.Code Civ.P. arts. 2642, and 2751–2754; or she could have taken a suspensive appeal from the order directing the issuance of the writ of seizure and sale within fifteen days of the signing of the order. However, they assert, after the proces verbal and recordation of deed by the Sheriff, the sale could not be attacked against the new purchasers pursuant to La.R.S. 13:4112. The Criddles have correctly stated the law.

Louisiana Revised Statutes 13:4112 provides in pertinent part:

> No action may be instituted to set aside or annul the judicial sale of immovable property by executory process by reason of any objection to form or procedure in the executory proceedings, or by reason of the lack of authentic evidence to support the order and seizure, where the sheriff executing the foreclosure has either filed the proces verbal of the sale or filed the sale for recordation in the conveyance records of the parish.

Once the sale is consummated and perfected by the filing of the proces verbal or the recording of the deed in favor of the new purchasers, the original owner/mortgagor cannot recover the property from the new purchasers:

> The debtor may not annul the sale if the property is in the hands of an innocent third person. Under long-settled jurisprudence, in such circumstances the general rule is that, once the property has been sold to one other than the mortgagee, the mortgagor cannot annul the sale and recover the property because of defects which he might have urged prior to the sale. *Continental Securities Corp. v. Wetherbee*, 187 La. 773, 175 So. 571 (1937); *Cullotta v. Grosz*, 173 La. 83, 136 So. 95 (1931); *Huber v. Jennings-Heywood Oil Syndicate*, 111 La. 747, 35 So. 889 (1904).

> Thus, as between them, the mortgagor-defendant must bear the consequences of his failure to prevent the sale, despite irregularities in proof, rather than an innocent purchaser. *Reed v. Meaux*, 292 So.2d 557, 560 (La.1974) (Tate, J., on original hearing).

*First Guar. Bank, Hammond, La. v. Baton Rouge Petro. Ctr., Inc.*, 529 So.2d 834, 840 (La.1987) (on rehearing) (emphasis added) (footnote omitted).

More recently, the fourth circuit explained the difference between the procedural defects that would permit a suit to prevent a sale, and the substantive defects necessary to annul a sale after it had been completed. However, as shown below, even if substantive defects are alleged in an effort to annul the sale, the property must still be in the hands of the creditor, not the innocent third party purchasers:

"Defenses and procedural objections to an executory proceeding may be asserted only either through an injunction proceeding to arrest the seizure and sale as provided in Louisiana Civil Code of Procedure arts. 2721 through 2754, or a suspensive appeal from the order directing the issuance of the writ of seizure and sale, or both." La. C.C.P. art. 2642.

A debtor who fails to exercise the right to take a suspensive appeal or to enjoin the sale may, under limited circumstances, attempt to nullify the completed sheriff's sale. *First Guaranty Bank, Hammond, La. v. Baton Rouge Petroleum Center, Inc.*, 529 So.2d 834, 841 (La.1988); *see Brown v. Everding*, 357 So.2d 1243, 1246 (La.App. 2d Cir.1978); *Deutsche Bank Nat'l Trust Co. v. Carter*, 10-663, p. 7 (La.App. 5 Cir. 1/25/11), 59 So.3d 1282, 1286. ***If the creditor is the adjudicatee at the sale***, the debtor may attack that sale based solely ***on substantive defects*** in the executory proceeding, such as ***fraud, lack of notice, or ill practices by the creditor***. *Taurus Leasing Corp. v. Chalaire*, 400 So.2d 303, 305 (La.App. 4th Cir.[), *writ denied*, 406 So.2d 604 (La. 1981)]; *Brown*, 357 So.2d at 1246. Executory process is a harsh remedy, and consequently, the strict compliance with the notice requirements is necessary. *Bank of New Orleans and Trust Co. v. Brule*, 389 So.2d 1148 (La.App. 4th Cir.1980); *see also Security Homestead Ass'n v. Fuselier*, 591 So.2d 335 (La.1991). ***Objections as to the lack of authentic evidence or as to minor defects of form or procedure may not be used as grounds for an action to annul a judicial sale of immovable property after recordation of the sheriff's sale or proces verbal in accordance with executory process.*** La. R.S. 13:4112; *Hibernia Nat'l Bank v. Lankster*, 578 So.2d 535, 536 (La.App. 4th Cir.1991). Without evidence of substantive defects in the executory proceedings to nullify a completed seizure and sale, **the *debtor has no cause of action*** for damages from a lawful seizure and sale. *Acme*, 464 So.2d at 947; *France v. American Bank*, 505 So.2d 1175, 1179 (La.App. 5th Cir.[), *writ denied*, 512 439 (La.1987)].

*Gulf Coast Bank & Trust Co. v. Warren*, 12-1570, pp. 8-9 (La.App. 4 Cir. 9/18/13), 125 So.3d 1211, 1217 (emphasis added).

In the present case, the Sheriff sold the property to the Criddles as the highest bidder during a public auction on April 22, 2015; he filed the proces verbal

dated the same date; and he recorded the deed in favor of the Criddles on April 30, 2015. Ms. Peltier did not file her suit to rescind or annul the sale until two months later, on June 29, 2015. As shown above, because Chase Bank, the mortgagee, was no longer in possession of the property, Ms. Peltier could not annul the sale and recover the property from the Criddles.

In her opposition to the Criddles' motion for summary judgment, Ms. Peltier admitted that she had been served with the notice of seizure and sale in October 2012 and in February 2015.[1] She did not assert any defects of notice. Ms. Peltier admitted to falling behind in her payments after losing her job and taking employment six months later at 40% of her previous income. She stated that she had leaks and repairs and sought assistance from Chase but was told that she was current in March 2012 and they would not defer the April 2012 payment. There is no evidence that she made any payments after that time. She asserted that she had numerous Chase agents and that there were problems with documentation in her application for assistance. As the trial court stated, however, there was no evidence of fraud, particularly regarding the innocent third-party purchasers, the Criddles.

Further, we must disagree with Ms. Peltier's argument that this judgment can be annulled under La.Code Civ.P. art. 2004 for vices of substance when it was obtained by fraud or ill practices. Under *Reed v. Meaux*, 292 So.2d 557, 560-61: "Since an order of sale is not a judgment in the strict legal sense, *Harrod v. Voorhies' Administratrix*, 16 La. 254 (1840), an action to annul is not governed by the procedure or prescription applicable to actions of nullity of judgments, now La.C.Civ.P. Arts 2001–2006."

---

[1] Chase asserted that the second service was in March 2015.

Accordingly, because there are no issues of law or fact precluding summary judgment in favor of the Criddles under La.Code Civ.P. art. 966, summary judgment in favor of the Criddles and dismissal of the Criddles from the suit were properly granted.

The Criddles' Petition for Eviction was based upon their purchase of the property at the Sheriff's sale which they documented in full in District Court Case 2015-3341, which comprises our appeal record for appeal No. 16-13. The record contains letters from the Criddles' attorney asking Ms. Peltier to vacate the premises without the necessity for eviction proceedings. The Criddles also documented the numerous texts and communications between themselves and Ms. Peltier wherein they granted her repeated continuances to remain on the premises for two months following their purchase of the property. While Ms. Peltier suggested paying them a monthly rental fee, the Criddles allowed her to stay rent free, though they themselves had financed the purchase and had a mortgage note to pay. No rental agreement was ever in place. The trial court's judgment of September 8, 2015, granting the Criddles' motion for summary judgment and dismissing them from Ms. Peltier's suit also grants their rule for eviction and orders Ms. Peltier to remove herself from the premises within fifteen days. We find no manifest error in the trial court's judgment on this issue.

**Chase Bank's Exception of No Cause of Action**

Relying on the same statutes as the Criddles, Chase Bank contends that Ms. Peltier has no cause of action under the facts of this case because the sale was perfected, and the deed in favor of the Criddles had already been recorded for two months, when Ms. Peltier challenged the foreclosure. Thus, any procedural

defects were cured by the recordation of the sale. We agree. Ms. Peltier's remedies for attacking the executory proceeding and foreclosure were injunction or a timely appeal, pursuant to La.Code Civ.P. art. 2642:

> Defenses and procedural objections to an executory proceeding may be asserted either through an injunction proceeding to arrest the seizure and sale as provided in Articles 2751 through 2754, or a suspensive appeal from the order directing the issuance of the writ of seizure and sale, or both.
>
> A suspensive appeal from an order directing the issuance of a writ of seizure and sale shall be taken within fifteen days of the signing of the order. The appeal is governed by the provisions of Articles 2081 through 2086, 2088 through 2122, and 2124 through 2167, except that the security therefor shall be for an amount exceeding by one-half the balance due on the debt secured by the mortgage or privilege sought to be enforced, including principal, interest to date of the order of appeal, and attorney's fee, but exclusive of court costs.

Ms. Peltier failed to avail herself of the injunction and appeal remedies for two-and-a-half years between the 2012 writ of seizure and the 2015 Sheriff's sale, and she is now precluded by La.R.S. 13:4112 from attacking the executory process for *procedural* defects. Further, as shown in the jurisprudence above, even if she had evidence of *substantive* defects in the executory process, she could only annul the sale if the property had been adjudicated to the creditor/mortgagee in the sale. But, since it was deeded over to the innocent third-party purchasers, the Criddles, even evidence of substantive defects in the executory proceedings cannot provide her with a cause of action in this case.

In the factually similar case of *Brown v. Everding*, 357 So.2d 1243 (La.App. 2 Cir. 1978), the debtor brought suit to annul a Sheriff's sale alleging defects in the executory process brought by the mortgagee after the debtor defaulted on the loan. As in the present case, the debtor did not avail himself of

the pre-sale remedies of injunction or appeal under La.Code Civ.P. art. 2642, and the suit to annul was brought after recordation of the deed in favor of the purchaser. The defects alleged included an incorrect section number in the property description in the mortgagee's petition for executory process, the use of a copy of the note rather than an original, lack of authentic evidence where some signatures had to be placed on an additional last page, lack of thirty-day notice of demand for payment, lack of personal service, premature issuance of the writ, and variance between the mortgage and the note regarding waiver of demand.

The *Everding* court found the faulty section number in the description to be a minor procedural error; found that the original note had been attached to the petition; found that failure to get all signatures on one page did not invalidate an otherwise authentic act; found that the demand was timely sent within thirty days; found that domiciliary service of the demand was sufficient; and found that the debtor was personally served with the petition for executory process. The court further found that issuance of the writ a few hours early was a minor procedural defect; and found that the creditor had complied with the more restrictive covenant of the mortgage, and the variance in the note failed to strike at the foundation of the creditor's right to use executory process, nor did it constitute a cause of action to annul. Thus, finding only procedural defects, the second circuit found that those defects were cured by recordation of the deed in favor of the purchaser at the Sheriff's sale under La.R.S. 13:4112.

Here, Ms. Peltier's main argument is that Chase had no standing to foreclose because it had sold the note and was no longer the holder. Yet, she argues that the note did not have any endorsements or assignments showing that it was transferred, thereby rendering it inauthentic under *Miller, Lyon & Co. v.*

12

*Cappel & Curry*, 36 La.Ann. 264 (La.1884), and insufficient for executory process. However, in *Miller*, the executory process was brought by a party other than the original holder of the note. As pointed out by the trial court, the note is in the record and shows the owner of the note to be JPMorgan Chase Bank, National Association, who was the original mortgagee and the seizing creditor.

While Ms. Peltier had letters indicating that Chase Bank transferred the loan internally to another of its entities and then back again, the entity that she signed with and obtained funds from in 2006 is the same entity that foreclosed upon her for defaulting on the loan in 2012. It is also the same entity that caused reissuance of the writ and caused the sale to go forward in 2015. Chase did not cause the actual sale of the property for two-and-a-half years after it obtained the writ of seizure. While there may have been a lack of clarity based upon the letters she received, we find no evidence of substantive defects or fraud. Moreover, under the statutes and cases cited, even substantive defects would not give Ms. Peltier a cause of action to rescind or annul the sale after the proces verbal and recordation of the deed in favor of the Criddles was filed. While we recognize her hardships, we cannot find support in the record for Ms. Peltier's position. Accordingly, pursuant to our de novo review, we find no error in the trial court's granting of the exception of no cause of action in favor of JPMorgan Chase Bank, National Association.

### The Sheriff's Exception of No Cause of Action

Sheriff Neustrom filed an exception of no cause of action asserting that all alleged actions by him, executing the Writ of Seizure and Sale, selling the property to the highest bidder, and recording the deed to the purchaser, were done

13

under his authority as the Sheriff and under his ministerial duties as provided by law. He cites La.Const. art. 5, § 27, which states that the Sheriff "shall be the chief law enforcement officer in the parish . . . and shall execute court orders and process." He also cites La.Code Civ.P. art. 321, which provides:

> The sheriff is the executive officer of the district court.
>
> He shall serve citations, summons, subpoenas, notices, and other process, and shall execute writs, mandates, orders, and judgments directed to him by the district courts, the courts of appeal, and the supreme court.

We note that the above articles are mandatory in their setting forth of the duties of the office. Additionally, in foreclosure cases, our jurisprudence has held that a debtor cannot sue the Sheriff for administering his ministerial duties under La.Const. art. 5, § 27 and La.Code Civ.P. art. 321. *Barrow v. Norwest Mortg. Corp.*, 02-1935 (La.App. 4 Cir. 3/26/03), 844 So.2d 52.

We further note that the specific articles on seizure under executory proceedings, La.Code Civ.P. arts. 2721, 2722, and 2723, are also mandatory in stating the Sheriff's duties in seizing, advertising, and appraising the property subject to foreclosure. In particular, La.Code Civ.P. art. 2721 states that the debtor's sole remedy is against the seizing creditor on whose behalf the Sheriff may act:

> A. The sheriff shall seize the property affected by the mortgage, security agreement, or privilege immediately upon receiving the writ of seizure and sale.
>
> B. The sheriff shall serve upon the defendant a written notice of the seizure of the property. Such notice of seizure shall be accomplished by personal service or domiciliary service. . . .
>
> C. Since secured collateral subject to a security interest under Chapter 9 of the Louisiana Commercial Laws need only be reasonably described in the debtor's

security agreement, the sheriff shall have no liability to the debtor or to any third party for wrongful or improper seizure of the debtor's or third party's property of the same general type as described in the debtor's security agreement. . . . The debtor's and other owner's sole remedy for the wrongful or improper seizure of the property shall be for actual losses sustained under R.S. 10:9-625 against the secured creditor on whose behalf and pursuant to whose instructions the sheriff may act.

Accordingly, pursuant to our de novo review, we find no error in the trial court's granting of the exception of no cause of action in favor of Sheriff Neustrom.

## V.

## **CONCLUSION**

Based upon the foregoing, the following judgments of the trial court dated September 8, 2015, are affirmed: the granting of the motion for summary judgment and the rule for eviction in favor of John and Alma Criddle; the granting of the exception of no cause of action in favor of JPMorgan Chase Bank, National Association; and the granting of the exception of no cause of action in favor of Sheriff Michael W. Neustrom.

All costs of appeal are assessed to Mary Andree Peltier.

**AFFIRMED**.

THIS OPINION IS NOT DESIGNATED FOR PUBLICATION. RULE 2-16.3, UNIFORM RULES—COURTS OF APPEAL.